In the Supreme Court of Georgia

Decided:   September 22, 2014

S14A0768.  HAMPTON v. THE STATE.

HINES, Presiding Justice.

Cleo Roosevelt Hampton, Jr. appeals the denial of his motion for new trial, as amended, following his convictions for malice murder and possession of a firearm during the commission of murder in connection with the fatal shooting of Jared Taylor. Hampton's sole claim on appeal is that his trial counsel provided ineffective assistance. Finding the claim to be without merit, we affirm.[1]

---

[1] The murder and related crimes occurred on January 21, 2011. On November 2, 2011, a Clayton County grand jury returned an indictment against Hampton and Darion Cortez Brownlee: Count (1) - malice murder; Count (2) - felony murder while in the commission of armed robbery; Count (3) - armed robbery; Count (4) - felony murder while in the commission of aggravated assault; Count (5) - aggravated assault with a deadly weapon; Count (6) - aggravated assault with the intent to rob; Count (7) - possession of a firearm during the commission of murder; Count (8) - possession of a firearm during the commission of armed robbery; Count (9) - possession of a firearm during the commission of aggravated assault; Count (10) (Hampton only) - possession of a pistol or revolver by a person under 18; and Count (11) - theft by receiving stolen property. Hampton was tried before a jury March 26-29, 2012, and was found guilty of all charges.  On March 29, 2012, he was sentenced to life in prison with the possibility of parole on Count (1), and a consecutive five years in prison on Count (7).  The felony murder verdicts were vacated by operation of law, *Malcolm v. State*, 263 Ga. 369, 371–372 (4) (434 SE2d 479) (1993), and the verdicts on the remaining counts were found to merge with that on Count (1) for the purpose of sentencing. A motion for new trial was filed on April 10, 2012, amended on May 2, 2013, and denied on October 29, 2013. A notice

The evidence construed in favor of the verdicts showed the following. During the morning of January 21, 2011, Hampton and Darion Brownlee went to Jared Taylor's home in Clayton County under the guise that they intended to sell him a handgun. Taylor lived with his girlfriend, Angela Davis, and the two sold marijuana out of the home that they shared. Taylor used calls to a cell phone and text messages to arrange drug deals. He kept as much as $25,000 in the home and stored marijuana in a black book bag on his side of the couple's bed. Taylor had a handgun, but he carried it only when someone he didn't know came to buy drugs. Otherwise, Taylor stored the handgun in the couple's bedroom under his pillow.

Earlier on the morning of January 21, Davis left home to run errands and called Taylor around 11:30 a.m. to ask him what he wanted for lunch. While on the phone with Taylor, Davis heard at least two other voices in the background. After buying Taylor's lunch from a restaurant and running some more errands, around 1:00 p.m., Davis attempted repeatedly to call Taylor on the cell phone he used, but there was no answer. At approximately 1:20 p.m., Davis returned

of appeal was filed on November 25, 2013, and the case was docketed in this Court's 2014 April Term. The appeal was submitted for decision on the briefs.

home to find the usually locked entrance door unlocked and Taylor lying bloody on the floor between the hallway and the kitchen. Taylor died from a single gunshot wound to the head. Davis saw the cell phone used by Taylor under the kitchen table and she used it to call 911. While waiting for police to arrive, Davis discovered that the closet was in complete disarray and the access panel to the attic had been disturbed; however, marijuana and some drug proceeds that were stashed in a locked "makeup case" had gone undiscovered. Also, Taylor's handgun was still under his pillow. Because Davis did not want the police to learn that the couple was dealing drugs, she hid the marijuana and money in a neighbor's truck. The police's initial investigation of the crime scene revealed several footprints inside and outside of the home.

Davis's sister knew Hampton and Brownlee through mutual friends. On the night of the murder, Hampton showed up at the sister's house claiming that he was at Taylor's home earlier to sell him a handgun but left to go to Southlake Mall. After the sister received a telephone call informing her that Taylor had died, Hampton commented that he "didn't mean it" and he left. About a month before Taylor's murder, Davis's sister overheard Hampton and Brownlee discussing a plan to rob Taylor and Davis; Brownlee stated that "he knew where

3

everything was . . . where the attic was and where [Taylor] hid his stuff at." At the time of the conversation, Hampton was wielding a handgun. Subsequently, Davis's sister related the overheard conversation to the police.

The police questioned Hampton about his involvement in the shooting. At first, Hampton admitted to being present during Taylor's murder and that he "shot two and gave him one in the head." Later in the investigation, however, Hampton's story was that he and Brownlee went to Taylor's home only to sell him a handgun, and Brownlee decided on his own to shoot Taylor.

Surveillance video taken the day of Taylor's death showed Hampton and Brownlee shopping with cash at Southlake Mall, where Hampton purchased clothes and shoes. After receiving permission to search Hampton's residence, officers found clothing and shoes soaking in a large trash can full of water. The shoes that the police recovered were the same size and brand of shoes that Hampton later replaced with a purchase at Southlake Mall and they matched some of the shoe prints recovered by the police at the crime scene. Subpoenaed records from the cell phone used by Hampton revealed several text messages and phone calls between Hampton and Brownlee on the day of Taylor's murder. Testifying in his own defense at trial, Hampton admitted that he and Brownlee

discussed robbing Taylor, and that he knowingly accepted from Brownlee some of the cash stolen from Taylor and used it to shop at the mall.

1. Hampton has not asserted that the evidence was insufficient to sustain his convictions; nevertheless, this Court has reviewed the evidence and finds it sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Hampton was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Hampton contends that his trial counsel deprived him of constitutionally effective assistance by failing to seek the suppression of the subpoenaed text messages. In order for Hampton to prevail on such claim he must demonstrate, pursuant to *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984), that his counsel's performance was deficient and that, but for the deficiency, there is a reasonable probability of a different outcome at trial. *Allen v. State*, 293 Ga. 626, 627 (2) (748 SE2d 881) (2013). In order to satisfy the first prong of *Strickland*, Hampton must overcome the strong presumption that his trial counsel's performance fell within a wide range of reasonable professional conduct and that the decisions made by counsel were the result of reasonable professional judgment; the reasonableness of the conduct is judged from

5

counsel's perspective at the time of trial and under the particular circumstances then existing in the case. Id. To meet the second requirement of *Strickland*, Hampton must show the reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. In the present review, this Court will accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but the Court will independently apply the legal principles to the facts. Id.

Citing OCGA §§ 16-11-66.1 (a)[2]; 16-11-67[3], and 18 USCA § 2703 (a)[4],

---

[2]OCGA § 16-11-66.1 (a) provides:

A law enforcement officer, a prosecuting attorney, or the Attorney General may require the disclosure of stored wire or electronic communications, as well as transactional records pertaining thereto, to the extent and under the procedures and conditions provided for by the laws of the United States.

[3] OCGA § 16-11-67 provides:

No evidence obtained in a manner which violates any of the provisions of this part shall be admissible in any court of this state except to prove violations of this part.

[4]18 USCA § 2703 (a), in effect during the applicable time frame, provided in relevant part:

Contents of wire or electronic communications in electronic storage.--A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant

Hampton argues that he had a statutory right to suppress the text messages, from January 21-24, 2011, because they were obtained without a warrant which he maintains federal law requires in the absence of a life-threatening emergency. But, a criminal defendant has standing to suppress evidence obtained through an illegal search or seizure only in the situation in which his or her own rights are violated, as such rights are personal and are not to be asserted vicariously. *Black v. State*, 281 Ga. App. 40, 42 (1) (635 SE2d 568) (2006). And, an individual can successfully argue for suppression of the product of a Fourth Amendment violation only if that person's rights were violated by the search itself; suppression of the evidence is not available to one who is aggrieved solely by the introduction of damaging evidence because the exclusionary rule is to protect individuals whose Fourth Amendment rights have been violated. *Ellis v. State*, 256 Ga. 751, 755(2) (353 SE2d 19) (1987) (applied Fourth Amendment search principles to determine whether defendant had standing to challenge the electronic surveillance of a co-defendant's telephone). In this case Hampton is arguing that he has a right to suppression under the cited federal and state

issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction.

statutes. As for Hampton's invocation of 18 USCA § 2703 (a), federal courts have held that there is no statutory suppression remedy under the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 et seq. *United States v. Booker*, 2013 WL 2903562 (N.D. Ga., 2013), citing *United States v. Clenney*, 631 F.3d 658, 667 (4th Cir.,2011); *United States v. Perrine*, 518 F.3d 1196, 1202 (10th Cir., 2008); *United States v. Steiger*, 318 F.3d 1039, 1049 (11th Cir., 2003); *United States v. Smith*, 155 F.3d 1051, 1056 (9th Cir.,1998); *Suarez–Blanca*, 2008 WL 4200156 (N.D. Ga., 2008). As for violations of our state statutes regulating eavesdropping, surveillance, or the interception of communications, OCGA §§ 16–11–62 through 16–11–67, there is statutory authority for suppression pursuant to OCGA § 17-5-30, but under that statute "a pretrial motion to suppress is available only to the person aggrieved by an unlawful search and seizure." *Deleon-Alvarez v. State*, 324 Ga. App. 694, 699 (2) (751 SE2d 497) (2013), quoting *Romano v. State*, 162 Ga. App. 816, 819 (1) (a) (292 SE2d 533) (1982). Indeed, the focus of OCGA §§ 16–11–62 through 16–11–67 is the protection of individuals from invasion of their privacy. *Deleon-Alvarez v. State*, supra at n. 11. A Fourth Amendment analysis is appropriate, and as noted, rights under the Fourth Amendment are personal, and

in order to challenge the validity of a government search an individual must actually enjoy the reasonable expectation of privacy, that is, the individual must have standing. *United States v. Dooley,* 2013 WL 2548969 (N.D. Ga., 2013); *Suarez–Blanca*, 2008 WL 4200156 (N.D. Ga., 2008). Thus, demonstrating standing is a threshold burden for suppression of the evidence. *Rakas v. Illinois*, 439 U.S. 128, 130 (n. 1) (99 SCt 421, 58 LE2d 387) (1978). Hampton fails to meet such burden.

Indeed, the named subscriber for the cell phone number at issue was not "Hampton."[5] And, Hampton has produced no evidence of the use of an alias in regard to the account or that he had any legal link to the account, much less any ownership interest in it; nor has he shown that he was an authorized user on the account, or the de facto exclusive, primary, or customary user of the cell number at issue. See *United States v. Dooley,* supra; *Suarez–Blanca,* supra; compare *United States v. Herron*, 2014 WL 824291 (E.D.N.Y., 2014). Inasmuch as there was no evidence that Hampton had a sufficient privacy interest in the cell phone whose calls and text messages were the subject of the subpoena, he lacked standing to seek suppression of the texts at issue. See *Deleon-Alvarez v. State*,

[5]The cell phone provider's records show that the named subscriber was "Terric White."

9

supra at 699 (2) (a). Therefore, Hampton's trial counsel cannot be found to be deficient for not having moved to suppress the texts on the basis now urged; the failure to make a meritless motion or objection does not provide a basis upon which to find ineffective assistance of counsel. *Moore v. State,* 293 Ga. 676, 679 (5) (a) (748 SE2d 419) (2013).

Even assuming arguendo that suppression was possible, Hampton still cannot show trial counsel's ineffectiveness. At the hearing on the motion for new trial, as amended, trial counsel testified that he did not object to the text messages because they contained information that appeared to be helpful to Hampton's defense in that they corroborated that Brownlee initiated contact with Hampton, was the instigator of the fatal incident as well as the shooter, and that Hampton went to the victim's home merely to purchase marijuana; at the time of trial, defense counsel "was grasping for straws, . . . looking for any and every bit of information or facts that could help [Hampton] with his defense." Generally, a matter of reasonable trial strategy and tactics does not constitute ineffective assistance of counsel. *Boykins v. State*, 294 Ga. 277, 279 (2) (751 SE2d 811) (2013). And, the record fails to provide any basis for finding that the articulated strategy for using the text messages was, at the time of trial, unreasonable. The

10

fact that at the motion-for-new-trial hearing, trial counsel conceded that in reviewing the totality of the text messages they might have been more damaging than helpful, is of no moment because "hindsight has no place in an assessment of the performance of trial counsel" *Hartsfield v. State*, 294 Ga. 883, 888 (3) (b) (757 SE2d 90) (2014). Furthermore, the fact that present counsel disagrees with trial counsel's strategy does not render such strategic decision unreasonable. *McKenzie v. State*, 284 Ga. 342, 349 (4) (e) (667 SE2d 43) (2008).

Finally, even if trial counsel was found to be deficient in the manner urged, Hampton cannot show a reasonable probability that the outcome of his trial would have been different had the text messages not been in evidence. The remaining evidence against Hampton, which included his inculpatory statements to police and his trial testimony that he supplied the pistol to Brownlee, that he was at the victim's home at the time of the fatal shooting, and that he knowingly accepted and used money taken from the victim, was overwhelming. See *Dunn v. State*, 291 Ga. 551, 553 (4) (a) (732 SE2d 524) (2012). Consequently, Hampton cannot carry his burden of proving the ineffective assistance of his trial counsel. Id.

Judgments affirmed. All the Justices concur.

11

S14A0768.  HAMPTON v. THE STATE.

NAHMIAS, Justice, concurring.

I concur fully in the Court's opinion.  With respect to Division 2, however, I want to make sure that our holding that Hampton lacks statutory standing to seek suppression of the text messages between Brownlee's phone and the cell phone subscribed to by "Terric White" is not read to suggest that it was appropriate for the police to use a subpoena to obtain that information, to the extent that the information included the *contents* of the text messages.

Under current *constitutional* doctrine, the Fourth Amendment's protections do not encompass records of a person's stored communications when the police obtain those records from someone else, like the person's communications provider.  See Smith v. Maryland, 442 U.S. 735, 743-744 (99 SCt 2577, 61 LE2d 20) (1979) ("This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."); Registe v. State, 292 Ga. 154, 156 (734 SE2d 19) (2012). However, federal and Georgia *statutory* law imposes limits on the authority of law enforcement to demand stored wire and electronic communications information from a

communications provider. The statutes generally authorize governmental entities to require providers to disclose the *contents* of recently stored communications only by means of a properly issued *warrant.* See OCGA § 16-11-66.1 (a) ("A law enforcement officer, a prosecuting attorney, or the Attorney General may require the disclosure of stored wire or electronic communications, as well as transactional records pertaining thereto, to the extent and under the procedures and conditions provided for by the laws of the United States."); 18 USC § 2703 (a) ("A governmental entity may require the disclosure by a provider of electronic communication service of the *contents* of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction." (emphasis added)). A *subpoena* may be used only to demand *transactional records* about such a communication, such as the telephone numbers between which it went, the time it occurred, or the names of the subscribers to the phone numbers – information that does not directly reveal the contents of the communications. See 18 USC § 2703 (c) (allowing a

2

governmental entity to use an administrative, grand jury, or trial subpoena, in addition to a warrant or court order, to require the disclosure of "a record or other information pertaining to a subscriber to or customer of such service (*not including the contents of communications*)" (emphasis added)).

Stored electronic communications are increasingly a rich source of information for use in criminal investigations and prosecutions, and law enforcement officials are understandably interested in obtaining such information from communications providers. But police and prosecutors should do so in the right way. The distinction between contents and transactional records must not be blurred, and instead needs to be carefully and clearly delineated with regard to demands involving text messages, e-mails, and other types of electronic communications for which the stored information may include both the "envelopes" for the communications (transactional records) and the "letters" (contents) to which that packaging information relates. When defendants have statutory standing to seek suppression, as will often be the case, the State may find itself precluded from admitting important evidence if its officers selected the wrong process to obtain the stored communications information they wanted.

3