296 Ga. 636
FINAL COPY

S14A1278. ROSS v. THE STATE.

MELTON, Justice.

Following a jury trial, Lynitra Ross was found guilty of malice murder based on her role in a murder-for-hire plot that resulted in the shooting death of Richard Schoeck.[1] On appeal, Ross contends that the trial court erred by failing to suppress certain cell phone records evidence at trial and that her trial counsel was ineffective. For the reasons that follow, we affirm.

1. Viewed in the light most favorable to the jury's verdict, the record reveals the following facts. Ross worked as a medical assistant and billing coder at Georgia Spine and Neurosurgery Center, and her friend, Stacey Schoeck, worked there as the office administrator. In January 2010, Ross and Schoeck had lunch together, and Schoeck told Ross that she wanted to have her husband,

---

[1] On June 10, 2010, Ross was indicted for malice murder. Following a May 9-22, 2012 jury trial, Ross was found guilty of murder. On August 10, 2012, the trial court sentenced Ross to life imprisonment. Ross filed a motion for new trial on August 20, 2012, which she amended with new counsel on April 26, 2013. The trial court denied the motion on July 15, 2013. Following the payment of costs, Ross' timely appeal was docketed in this Court for the September 2014 term and orally argued.

Richard Schoeck, killed because she thought that he was molesting her sons.[2]

Ross informed Schoeck that her boyfriend, Reginald Coleman, could kill Mr. Schoeck because Coleman did such work "on the side" for extra money. Ross told Schoeck that she would talk to Coleman about killing Mr. Schoeck.

Schoeck followed up with Ross via text message on the weekend after their lunch conversation to see if Ross had spoken with Coleman. Ross indicated that she had, and she set up a time for her and Schoeck to meet with Coleman at his apartment the following week to discuss the details of their arrangement. Schoeck and Ross met with Coleman at his apartment on January 18, 2010, and they discussed their plans for the murder and the terms for payment. Ross suggested that the killing should take place in a secluded area near Schoeck's grandparents' home, and Schoeck said that Belton Bridge Park, which was such a location, would be a good place. For the killing, Schoeck agreed to pay Coleman $10,000 in cash, give him her grandparents' 2009 Chevrolet Impala, and give him a house that his girlfriend, Ross, had currently been renting from Schoeck. The parties agreed that the murder would take place on Valentine's Day

---

[2] Schoeck later admitted to police that her husband had not, in fact, been molesting the children.

and that Coleman would kill the victim in a manner that would make it appear to have been a robbery after Schoeck lured the victim to Belton Bridge Park. Because Coleman needed a gun to commit the murder, Schoeck took out $600 from a nearby ATM to pay Coleman's expenses for purchasing a gun.

After scoping out the proposed murder location with Ross and Coleman, Schoeck gave Coleman the Impala as partial payment,[3] and she transferred $8,900 to Ross' bank account to cover part of the $10,000 for the murder. Schoeck transferred the remaining $1,100 balance to Ross' bank account the Friday before Valentine's Day, as Ross had previously informed Schoeck that the murder would not take place until the entire $10,000 had been paid.

On February 14, 2010, Schoeck spoke with Ross at work about transferring the $10,000 to Coleman. Schoeck left the office and drove to her grandparents' home, where she had told her husband to meet her by driving there separately. Mr. Schoeck arrived at the grandparents' home, and, after dinner, he was to drive to Belton Bridge Park separately from Schoeck. Schoeck would allegedly meet him at the park later that evening to exchange Valentine's

---

[3] Schoeck gave a bill of sale to Ross in order to make it appear as though the car had been sold to Ross.

gifts. While Schoeck was at her grandparents' house, Ross called Schoeck, telling her that Coleman needed to know the color of Mr. Schoeck's truck, which Schoeck told her. Schoeck later received a text message from Ross wishing her a "Happy Valentine's Day," after the murder had been completed.

Schoeck confirmed the likelihood that Mr. Schoeck was dead when she called his cell phone and he did not answer. Schoeck then drove to Belton Bridge Park, where she found Mr. Schoeck's truck and his dead body on the ground. Mr. Schoeck had been shot six times at close range: three times in the chest, twice in the head, and once in the hand. However, the scene had not been made to look like a robbery, as Mr. Schoeck's money, wallet, watch, and wedding ring had not been taken from him. Schoeck called 911 and portrayed herself as distraught to police.

Police investigators were able to discover tire tread marks at the crime scene, indicating that another car had been present at the time of the murder. The police were eventually able to match the tire tread marks to the type of tires that were on the 2009 Impala that Schoeck had given to Coleman. Information taken from Schoeck's cell phone with her consent showed that Ross and Coleman were on her list of contacts, and that Schoeck had been in contact with Ross

around the time that Mr. Schoeck was killed. Police then sought cell phone

records relating to all calls made within four hours of the murder that were

connected to two cell phone towers that were owned by Sprint[4] and that were

located in close proximity to the scene of the shooting. Pursuant to 18 USC §

2703,[5] police obtained this cell phone "tower dump" information by court order,

_____

[4] Although Ross' cell phone provider was Verizon, cell phone calls made in the area of Mr. Schoeck's murder had to be relayed through one of these Sprint cell phone towers.

[5] As a part of 18 USC § 2701 et seq., 18 USC § 2703 allows governmental entities to "require a provider of remote computing service to disclose the contents of any wire or electronic communication" covered under the statute, and to "require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity obtains a court order for such disclosure under subsection (d) of this section." 18 USC § 2703 (b) and (c).

A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. In the case of a State governmental authority, such a court order shall not issue if prohibited by the law of such State. A court issuing an order pursuant to this section, on a motion made promptly by the service provider, may quash or modify such order, if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider.

which showed a call around the time of the murder from Coleman, whose phone was near one of those towers, to Ross. From this information, police obtained cell phone records of Coleman and Ross by court order. Further investigation eventually led to Schoeck's arrest, and Schoeck testified in significant detail about the entire murder-for-hire plot at Ross' trial.

This evidence was sufficient to enable a rational trier of fact to find Ross guilty of murder beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); see also OCGA § 16-2-20 (parties to a crime).

2. Ross contends that the trial court erred by admitting into evidence at trial the Sprint cell phone "tower dump" records that police obtained by court order pursuant to federal law, 18 USC § 2703 (d). However, while Ross did move to suppress this evidence prior to trial based on the idea that the evidence had been obtained in violation of applicable federal laws, her motion was denied, and when the evidence was presented for admission during the trial, she affirmatively stated that she had no objection to its admission. She has therefore

---

18 USC § 2703 (d).

waived review of this issue on appeal.[6] Monroe v. State, 272 Ga. 201 (6) (528 SE2d 504) (2000).

In any event, even if the issue had been properly preserved, Ross would not be entitled to relief. As an initial matter, as Ross properly concedes, she lacks standing to challenge the admission into evidence of the cell phone "tower dump" records at issue on Fourth Amendment grounds, because, as to Ross, the "tower dump" records were only used to show telephone contact between Ross and Coleman and were owned by Sprint. Ross did not own the "tower dump" records, and the records were not used to show the location from which Ross received Coleman's call when they were in contact with each other around the time of the murder. Thus, at least as to Ross, the "tower dump" cell phone

---

[6] To the extent that Ross argues that the denial of her motion to suppress should be subject to plain error review, she is mistaken, as, at least for cases like hers that were tried before January 1, 2013, plain error review is "limited to alleged error in three circumstances: the sentencing phase of a trial resulting in the death penalty, a trial judge's expression of opinion in violation of OCGA § 17-8-57, and a jury charge affecting substantial rights of the parties as provided under OCGA § 17-8-58 (b)." (Citation omitted.) Durham v. State, 292 Ga. 239, 240 (2) (734 SE2d 377) (2012). For cases tried after January 1, 2013, with regard to "[r]ulings on evidence," a court is allowed "to consider plain errors 'affecting substantial rights although such errors were not brought to the attention of the court.' OCGA § 24-1-103 (d)." (Citation omitted.) Id.

records at issue here are no different than telephone billing records, which

> are business records owned by the telephone company, not the defendant. As a result, defendants [like Ross] generally lack standing to challenge the release of such records under the Fourth Amendment because they do not have a reasonable expectation of privacy in records belonging to someone else. Kesler v. State, 249 Ga. 462, 469 (5) (291 SE2d 497) (1982). Accordingly, [Ross] is not entitled to challenge the release of [the tower dump] phone records in this case on Fourth Amendment grounds.

Registe v. State, 292 Ga. 154, 156 (734 SE2d 19) (2012).

In this regard, Ross also would not have standing to challenge the admission of the "tower dump" records themselves (as opposed to the contents of her phone calls) under State law, as a defendant who lacks standing to challenge the admission into evidence of stored electronic records under the Fourth Amendment similarly lacks standing to challenge the admission of such records under OCGA § 16-11-67. See Hampton v. State, 295 Ga. 665 (2) (763 SE2d 467) (2014).

Furthermore, the remedy sought by Ross, namely suppression of the evidence, is not an available remedy under federal law, as 18 USC § 2707 provides that a civil action, not suppression, is the available remedy when a party improperly releases covered records or information under 18 USC § 2701

8

et seq. See also <u>Hampton</u>, supra, 295 Ga. at 669 (2); <u>Registe</u>, supra, 292 Ga. at 156-157 and n. 2 ("[T]he remedy sought by [the defendant], namely suppression of evidence, is not an available remedy under . . . 18 USC § 2702 (c) (4) . . . [as] 18 USC § 2707 allows a subscriber to file a civil action against any party who improperly releases covered records or information").

Thus, the trial court did not err in admitting into evidence the cell phone "tower dump" records at issue here.

3. In light of our holding in Division 2, supra, that the trial court did not err in admitting into evidence the Sprint cell phone tower records, Ross' claim that her counsel was ineffective for allegedly having failed to effectively argue against the admission of these records is without merit. See <u>Hampton</u>, supra, 295 Ga. at 670 (2); <u>Hayes v. State</u>, 262 Ga. 881, 884 (3) (c) (426 SE2d 886) (1993) ("Failure to make a meritless objection cannot be evidence of ineffective assistance").

<u>Judgment affirmed. All the Justices concur.</u>

Decided February 2, 2015 – Reconsideration denied March 2, 2015.

Murder. Hall Superior Court. Before Judge Deal.

Yurachek & Associates, Mark A. Yurachek, for appellant.

Lee Darragh, District Attorney, Lindsay H. Burton, Wanda L. Vance, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ryan A. Kolb, Assistant Attorney General, for appellee.

Alston & Bird, Emily R. Chambers, Gerald R. Weber, Jr., amici curiae.