In the Supreme Court of Georgia

Decided:     March 7, 2016

S15A1736.  MOSS v. THE STATE.

NAHMIAS, Justice.

Appellant Willie Moss challenges his convictions for malice murder and possession of a firearm during the commission of a felony in connection with the shooting death of Rashymel Young.  We affirm.[1]

1.     (a)     Viewed in the light most favorable to the verdicts, the evidence at trial showed the following.  On the evening of March 5, 2011, Young and his brother, Dennis Harding, were waiting for an order of food

---

[1]  The victim was killed on March 5, 2011.  On June 8, 2011, a Chatham County grand jury indicted Appellant and Javonte Wright for malice murder, felony murder, aggravated assault, and three counts of possession of a firearm during the commission of a felony.  The charges against Wright were later nolle prossed.  At a trial from September 9 to 12, 2013, the jury found Appellant guilty of all charges.  The trial court sentenced him to serve life in prison for malice murder and five consecutive years for possession of a firearm during the commission of that felony; the remaining counts were vacated or merged for sentencing purposes.  On September 24, 2013, Appellant filed a motion for new trial, which he amended with the assistance of new counsel on April 8, 2014.  After an evidentiary hearing on June 23, 2014, and the filing of a post-hearing brief that the trial court treated as an amendment to Appellant's motion, the court denied the motion on February 23, 2015.  Appellant filed a timely notice of appeal directed to the Court of Appeals, which on July 2, 2015, transferred the appeal to this Court, where the case was docketed to the September 2015 term and submitted for decision on the briefs.

outside a Chinese restaurant in a strip mall in east Savannah when two men came out of a nearby barber shop. One of the men, later identified as Appellant, was tall, with a dark complexion and dreadlocks pulled into a ponytail; the other man, later identified as Javonte Wright, was shorter, with a light complexion and a "low haircut." Harding did not know the men, but his brother seemed to recognize them. Appellant said that he had marijuana to sell and exchanged phone numbers with Young. Appellant and Wright then got into a dark green Camaro with dark-tinted windows and square tail pipes and drove away.

About ten minutes later, the food was ready, and Young and Harding began walking towards their grandmother's house a few blocks away. As they walked down Nevada Street, Harding saw the same dark green Camaro driving down the road and remarked to Young that the car looked suspicious. Suddenly, the car sped towards Young and Harding and then came to a complete stop. The windows were down, and Harding saw that Appellant was driving and Wright was in the passenger seat. Appellant pointed a silver and black gun at Young and opened fire, shooting him three times and killing him. Appellant then drove down the street, made a U-turn, and stopped briefly by Young's body before driving away.

Harding, who ran when the shooting started, called 911 from a nearby house. Santiago Jiminez also saw the shooting and called 911. The police arrived ten to 15 minutes later. Harding, who had returned to check on his brother, spoke to the police and described Appellant and Wright, the Camaro, and the events leading up to the shooting. Harding later realized that he had seen a picture of Appellant and Wright prior to the shooting on a friend's Facebook page, and he brought the photo to the police's attention. The police learned from Harding's friend that Appellant and Wright had attended Savannah High School, and the principal there helped the police to identify Appellant and Wright by name. The police then prepared a photographic lineup, and Harding identified Appellant as the shooter and Wright as his associate. Appellant was arrested six days after the shooting at a local apartment complex.

At trial, Jiminez and a second eyewitness, Angel Molina, testified that the shots were fired at Young from the driver's side of a dark colored Camaro with tinted windows. Tim Oliver, a carpenter who worked at the apartment complex where Appellant was arrested, testified that a few days after the shooting, he observed a man matching the description Harding had given of the shooter getting out of a dark green Camaro with tinted windows and a loud tail pipe.

Harding made an in-court identification of Appellant as the shooter. Appellant did not testify.

(b) Appellant contends that the evidence presented at trial was legally insufficient to support his convictions, pointing to the lack of physical evidence connecting him to the shooting and the fact that only the victim's brother, Dennis Harding, identified him as the shooter at trial. However, "[t]he testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-14-8. See Colzie v. State, 289 Ga. 120, 121 (710 SE2d 115) (2011). Moreover, two other eyewitnesses to the shooting corroborated Harding's description of the car driven by the shooter, and another witness testified that he saw a man matching Harding's description of the shooter getting out of the distinctive Camaro a few days after the shooting at the apartment complex where Appellant was soon arrested. Viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes of which he was convicted. See Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the

4

witnesses and to resolve any conflicts or inconsistencies in the evidence.'"" (citation omitted)).

2.      Appellant argues that a number of alleged procedural errors, considered cumulatively, violated his right to procedural due process.  First, Appellant claims that it took over a year to get full discovery from the prosecution.  However, Appellant's counsel had the opportunity before trial to review everything in the State's case file, including all the evidence that the State intended to introduce, and Appellant points to no evidence that the State deliberately withheld discovery to hamper the defense.  See Higgenbottom v. State, 290 Ga. 198, 202 n.1 (719 SE2d 482) (2011). Thus, he was not prejudiced by the length of time it took to get discovery.

Second, Appellant complains that the indictment given to the jury should not have been redacted to remove the name of his co-indictee, Javonte Wright, whose charges had been nolle prossed.  But a trial court has discretion to give the jury a redacted indictment where the only thing deleted is the name of a co-indictee, see Chandler v. State, 143 Ga. App. 608, 609 (239 SE2d 158) (1977), and Appellant has failed to explain how that discretion was abused here.

Finally, Appellant points to the State's failure to formally arraign him

until after the close of evidence at trial, when the court noted that he had not been arraigned while reviewing the indictment before sending it to the jury. But Appellant never objected at trial to the lack of an earlier arraignment, and "any error in the lack of arraignment was waived by [his] failure to raise the issue prior to verdict." Spear v. State, 270 Ga. 628, 632 (513 SE2d 489) (1999). Moreover, Appellant's rights were not affected by the late arraignment, as he does not assert that he was unaware of the charges against him, both sides participated in discovery and filed motions, and it is clear from his proceeding to trial that he was offering a plea of not guilty. See Singleton v. State, 324 Ga. App. 141, 145 & n.9 (749 SE2d 753) (2013).

For these reasons, Appellant's claim that his right to due process was violated has no merit.

3.      Appellant contends that the trial court erred in denying his motion to quash a search warrant used to obtain cell phone records from his service provider (none of which were introduced at trial). Appellant claims that the warrant was issued in violation of 18 USC § 2703, thereby violating the Fourth Amendment and depriving him of due process. However, Appellant withdrew his motion to quash at a motions hearing, before the trial court had ruled on it,

6

so he cannot now complain that the court did not grant it. See Ross v. State, 296 Ga. 636, 638-639 (769 SE2d 43) (2015) (holding that a defendant waived any challenge to the admission of cell tower records where she affirmatively said at trial that she had no objection to their admission).

Even if Appellant had properly preserved his claim, there was no violation of his Fourth Amendment rights under current doctrine, because the subscriber and call toll records sought belong to the service provider, not to Appellant, and he had no reasonable expectation of privacy in them. See id. at 639; Registe v. State, 292 Ga. 154, 156 (734 SE2d 19) (2012); Kesler v. State, 249 Ga. 462, 469-470 (291 SE2d 497) (1982). Furthermore, the federal statute on which Appellant relies provides no suppression remedy. See Ross, 296 Ga. at 640; Hampton v. State, 295 Ga. 665, 669 (763 SE2d 467) (2014).[2]

4.    Appellant maintains that the trial court violated his Sixth

---

[2]  Appellant has raised no claim based on Georgia law, which does provide a statutory suppression remedy in this context for persons with proper standing. See OCGA §§ 16-11-67, 17-5-30; Hampton, 295 Ga. at 669. Appellant argues that the search warrant was invalid because it was issued by a recorder's court rather than a superior court. See 18 USC § 2703 (c) (authorizing governmental entities to require providers of electronic communication service to disclose records and other information pertaining to a subscriber, but not the contents of communications, through, among other means, a state warrant issued "by a court of competent jurisdiction," which 18 USC § 2711 (3) (B) defines as relevant here to mean "a court of general criminal jurisdiction of a State authorized by the law of that State to issue search warrants"). In light of our holdings above, we need not address this argument.

7

Amendment right to confront the witnesses against him, as well as his Georgia statutory right to a thorough and sifting cross-examination, by denying his request to cross-examine Harding and a police detective about a prior shooting of the victim, which Appellant asserts would show that there were other potential suspects in the victim's murder. See Delaware v. Van Arsdall, 475 U.S. 673, 678-679 (106 SCt 1431, 89 LE2d 674) (1986); OCGA § 24-6-611 (b).[3]

> Certainly a defendant is entitled to introduce relevant and admissible testimony tending to show that another person committed the crime for which the defendant is tried. However, the proffered evidence must raise a reasonable inference of the defendant's innocence, and must directly connect the other person with the corpus delicti, or show that the other person has recently committed a crime of the same or similar nature.

Klinect v. State, 269 Ga. 570, 573 (501 SE2d 810) (1998) (citation omitted).

The evidence Appellant proffered did not meet the criteria stated in Klinect, and the trial court was not required to allow Appellant to introduce evidence "based purely on rumor, speculation, and conjecture." Woodall v. State, 294 Ga. 624,

---

[3] OCGA § 24-6-611 (b) says in relevant part: "A witness may be cross-examined on any matter relevant to any issue in the proceeding. The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against the party."

633 (754 SE2d 335) (2014). See also OCGA § 24-4-403.[4] The permissible scope of cross-examination is a matter committed to the sound discretion of the trial court, and under the facts of this case, we see no abuse of that discretion. See Nicely v. State, 291 Ga. 788, 796 (733 SE2d 715) (2012). This enumeration of error lacks merit.

5.     Finally, Appellant contends that his two trial lawyers provided him ineffective assistance in multiple ways. To prevail on this claim, Appellant must show that his counsels' performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See Strickland v. Washington, 466 U.S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984); Long v. State, 287 Ga. 886, 891 (700 SE2d 399) (2010). Appellant has not met this burden.

(a)     Appellant suggests that his trial counsel were deficient in failing to protect his right to procedural due process in the ways discussed above in Division 2 and in not pursuing the motion to quash the search warrant

---

[4] OCGA§ 24-4-403 says: "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

discussed above in Division 3. However, as explained in these divisions, Appellant still has not shown any violation of his rights, and it follows that he has not shown deficient performance or prejudice. See Hampton, 295 Ga. at 670 ("[T]he failure to make a meritless motion or objection does not provide a basis upon which to find ineffective assistance of counsel.").

(b) Appellant argues summarily that his trial counsel were deficient in not objecting to the volume of autopsy photographs admitted and the accompanying testimony by the medical examiner. Appellant claims that the probative value of that evidence was substantially outweighed by the danger of unfair prejudice, see OCGA § 24-4-403, because there was no question that the victim was shot and killed and the real question for the jury was who did the shooting.

The State offered into evidence seven pre-incision autopsy photos showing the victim's body. As autopsy photos in murder cases go, these were not especially gory or gruesome. See United States v. Kaiser, 545 F2d 467, 476 (5th Cir. 1977) ("We have viewed the photographs and . . . we cannot say that they are in any respect more gruesome or shocking than is inherent in any visual record of a murder."). The photos and related testimony were relevant to show

10

the nature and location of the victim's injuries, which corroborated the account of the shooting given by Harding and the other eyewitnesses. See United States v. De Parias, 805 F2d 1447, 1453 (11th Cir. 1986) ("Photographs of homicide victims are relevant in showing the identity of the victim, the manner of death, the murder weapon, or any other element of the crime."), overruled on other grounds by United States v. Kaplan, 171 F3d 1351, 1356-1357 (11th Cir. 1999). And the trial court had considerable discretion in determining whether the potential for prejudice substantially outweighed any probative value. See id.; State v. Jones, 297 Ga. 156, 163-164 (773 SE2d 170) (2015).

A lawyer is not required to make an objection that he reasonably believes will fail, and to demonstrate constitutionally deficient performance, Appellant must show that no competent attorney would think that the objection in question would have failed. See Premo v. Moore, 562 U.S. 115, 124 (131 SCt 733, 178 LE2d 649) (2011). A competent attorney in the position of Appellant's trial lawyers would have had every reason to believe that an objection to this autopsy evidence based on OCGA § 24-4-403 would fail, even if Appellant did not affirmatively dispute the State's proof that the victim was shot to death. See De Parias, 805 F2d at 1454. See also Johnson v. State, 292 Ga. 856, 860 (742 SE2d

11

460) (2013) (explaining, in a case governed by Georgia's old Evidence Code, that "this Court has routinely found it permissible for the State to introduce pre-autopsy photographs of a murder victim, even if duplicative and possibly inflammatory, for the purpose of illustrating the cause and manner of death," and that "[s]uch photographs are generally admissible even when the cause of death is not in dispute"). Accordingly, Appellant has not established that his trial counsel were ineffective in this respect.

(c) Appellant also claims that his trial counsel were ineffective in failing to move for a mistrial when the victim's family was "verbally and visually disruptive" during trial. However, as the trial court found in its order denying Appellant's motion for new trial, the trial transcript does not indicate that anything unusual of this sort happened during the trial or that Appellant was prejudiced by the presence of the victim's family.

(d) Appellant contends that his trial counsel were deficient in not calling his employer, Samuel Youmans, to provide an alibi defense. Lead trial counsel testified at the motion for new trial hearing that he decided not to call Youmans at trial because Youmans was a convicted felon; there were inconsistencies in his statements to defense counsel and between those

statements and a statement he gave to the police; counsel thought that Youmans "didn't come across as a very credible person"; and Youmans said that Appellant did deliveries as part of his job and at one point said that Appellant left work early on the night of the shooting to make a delivery on his way home, which was near where the shooting happened and would have fit the prosecution's timeline for the murder. Counsel explained his strategy this way: "My theory is if you're going to put up an alibi, it better be something that sticks because if you start putting up weak evidence before the jury, it makes you look desperate. And I didn't think that there was nearly enough there . . . to go down that road."

"A decision as to which defense witnesses to call is a matter of counsel's trial strategy and tactics and will not support a claim of ineffective assistance of counsel unless it is so unreasonable that no competent attorney would have made the decision under the circumstances." Shockley v. State, 297 Ga. 661, 666 (777 SE2d 245) (2015) (citation omitted). Given lead trial counsel's firsthand concerns about Youmans's credibility as a witness, the inconsistencies in and limitations of his statements, and his status as a convicted felon, we cannot say that the strategic decision not to call Youmans at trial was patently

13

unreasonable. Thus, Appellant failed to show deficient performance. See id;

Andrews v. State, 293 Ga. 701, 703 (749 SE2d 734) (2013). He also failed to

show prejudice, because Youmans would not have given him a solid and

complete alibi for the time of the murder. See Shockley, 297 Ga. at 666; Prince

v. State, 295 Ga. 788, 793-794 (764 SE2d 362) (2014).

(e) Finally, Appellant claims that his trial counsel were

ineffective in failing to properly provide the trial court with argument as to why

the victim's prior shooting was relevant in this case. Appellant abandoned this

claim by not presenting any argument or citation of authority to support it in his

brief. See Supreme Court Rule 22; Sharpe v. State, 272 Ga. 684, 690 (531 SE2d

84) (2000). In any event, as discussed above in Division 4, the prior shooting

has not been shown to be relevant to this case, so Appellant has not established

deficient performance by his trial counsel. Nor has Appellant established any

prejudice. Lead trial counsel explained at the motion for new trial hearing that

there were risks involved in presenting evidence of the victim's prior shooting,

because that shooting could be connected to one of Appellant's family members,

which "could ultimately lead to an argument by the State that now there was

motive [for Appellant to shoot the victim,] whereas the case was presented

14

without all of that." As counsel noted at another point in his testimony, "motive was one of the things that we could at least count on the State not being able to prove, and that was one of the things that we harped on."

Thus, Appellant has not shown that his trial counsel provided ineffective assistance in any of the ways alleged.

Judgment affirmed. All the Justices concur.