309 Ga. 698
FINAL COPY

S20A0697.  MARSHALL v. THE STATE.

McMILLIAN, Justice.

Appellant Terry Marshall appeals his convictions for the malice murder of Marshal Tucker, the attempted murder of Latonia Patterson, and other related crimes.[1] Marshall contends that the

---

[1] The crimes occurred on May 19, 2014. On August 15, 2014, a Fulton County grand jury indicted Marshall for malice murder (Count 1); attempted murder (Count 2); felony murder predicated on aggravated assault with a deadly weapon (Count 3); felony murder predicated on burglary (Count 4); felony murder predicated on possession of a firearm by a convicted felon (Count 5); aggravated assault of Tucker (Count 6); aggravated assault of Patterson (Count 7); aggravated battery (Count 8); first-degree burglary (Count 9); second-degree criminal damage to property (Count 10); possession of a firearm during the commission of a felony under OCGA § 16-11-106 (Count 11); possession of a firearm by a convicted felon under OCGA § 16-11-131 (Count 12); and possession of a firearm by a convicted felon during the commission of a felony under OCGA § 16-11-133 (Count 13).
Marshall was tried from August 10 to 12, 2015, and the jury found him guilty of criminal trespass as a lesser included offense of second-degree criminal damage to property and guilty on all the other counts. The trial court sentenced Marshall as a recidivist to serve life in prison without the possibility of parole for Count 1, thirty years consecutive for Count 2, twelve months for criminal trespass to be served concurrently with the sentence for Count 1, five years consecutive for Count 11, and fifteen years consecutive for Count 13, for a total sentence of life without parole plus fifty years. All other counts were either vacated by operation of law or merged for sentencing purposes. We address several merger issues in Division 2 below.
Marshall filed a motion for new trial on August 24, 2015, which he

trial court improperly sentenced him as a three-time recidivist, that the trial court plainly erred by relying on two of his out-of-state convictions in sentencing him as a recidivist, and that the trial court committed two merger errors at sentencing. Because we conclude that the trial court committed several merger errors, we vacate Marshall's conviction for aggravated assault of one victim. Otherwise, we affirm his convictions.

1. Viewed in the light most favorable to the jury's verdict, the evidence at trial showed that Marshall and Patterson, who were both from the small town of Valley, Alabama, dated in the early 1990s and then rekindled their relationship in March 2013. In April 2014, Patterson ended the relationship because she was tired of Marshall's "anger" and "distrust." Shortly before their break-up, Marshall gave Patterson $200 as a gift; after the break-up, he began threatening her and demanded that she repay the money "or else."

---

amended through new counsel on May 19, 2017. Following a hearing, the trial court denied the motion (as amended) on November 6, 2019. Marshall filed a notice of appeal to this Court, and this case was docketed to the April 2020 term and thereafter submitted for a decision on the briefs.

Marshall continued threatening Patterson over the phone and through her family, and she eventually had her cousin deliver repayment to him. In the meantime, Patterson met Tucker, and they began dating.

Around 11:30 p.m. on May 19, Tucker visited Patterson at her Fairburn, Georgia apartment. Patterson heard Tucker's "signature knock" at her door, and she opened the door to let him in. Upon opening the door, Patterson saw Marshall, who was holding a shotgun, running up the stairs behind Tucker. Patterson pulled Tucker into the apartment and bolted the door, but Marshall kicked in the door and shot Tucker in the head. After Patterson unsuccessfully tried to escape by breaking through the screen enclosure of the apartment's balcony, Marshall dragged her back into the apartment as she attempted to fight him off. Once inside, Marshall used his hand to hold Patterson's head against the coffee table while he reloaded the shotgun. Patterson continued fighting Marshall until she heard a loud boom and felt a pain as she was shot in the neck. Patterson noticed that Marshall had shot himself in the

hand, and she played dead until he left the apartment. Several of Patterson's neighbors observed Marshall leaving the apartment, and one noticed that Marshall was cradling his hand. Marshall left a trail of blood down the stairs outside Patterson's apartment. When first responders arrived at the apartment, Patterson immediately identified Marshall as the assailant. Tucker was declared dead at the scene, and the medical examiner later identified his cause of death as a gunshot to the head.

Fairburn Police Department officers were dispatched to Marshall's Alabama home. Marshall's car was in the driveway, and officers noticed blood inside the car, as well as on the steps leading up to his front door. Marshall was not at home. Sometime later, Marshall turned himself in to police. He was taken to the hospital for treatment of his wounded hand, and officers heard Marshall tell doctors that the injury was caused by a shotgun. The gun was never recovered.

Blood swabs taken from Patterson's apartment were later matched to Marshall, and cell phone records showed that Marshall

was in the vicinity of Patterson's apartment on the night of the shootings. At trial, Marshall stipulated to being a convicted felon.

Although not enumerated as error by Marshall, consistent with our customary practice in murder cases, we have reviewed the record and conclude that the evidence as summarized above was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Marshall was guilty of the crimes of which he was found guilty.[2] See *Jackson v. Virginia,* 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. We turn first to various merger errors, two of which have been enumerated as error by Marshall. After Marshall was found guilty of, among other counts, malice murder and three counts of felony murder, he was sentenced for malice murder, and the felony murder counts were vacated by operation of law. Nevertheless, the trial court purported to merge the predicate felony counts of

---

[2] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State,* 309 Ga. 385, 399 (4) (846 SE2d 83) (2020). The Court began assigning cases to the December term on August 3, 2020.

aggravated assault, burglary, and felon-in-possession (Counts 6, 9, and 12) into the vacated felony murder counts. Although Marshall does not contest these mergers on appeal, the trial court erred in merging these counts "inasmuch as there is no felony murder count into which the underlying felony can merge, since the felony murder conviction has been statutorily vacated." *West v. State*, 305 Ga. 467, 470 (1) (b) (ii) (826 SE2d 64) (2019) (citation and punctuation omitted). Instead, the felon-in-possession count (Count 12) should have merged into the possession of a firearm by a convicted felon during the commission of another felony count (Count 13), and the aggravated assault (Count 6) should have merged into the malice murder conviction, not the vacated felony murder count. See *Atkinson v. State*, 301 Ga. 518, 521 (2) (801 SE2d 833) (2017) ("In this regard, rather than purporting to merge the possession of a firearm by a convicted felon count into the felony murder and malice murder counts, the trial court should have instead merged the felon-in-possession count into the count relating to the use of a firearm by a convicted felon during the commission of another felony."); *Manner*

*v. State*, 302 Ga. 877, 891 (IV) (808 SE2d 681) (2017) ("The court properly merged the aggravated assault into the malice murder verdict, as those two counts of the indictment were both premised on the act of shooting [the victim]."). However, because these merger errors make no practical difference and the State has not raised these issues by cross-appeal, we decline to correct them here. See *Dixon v. State*, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017).

We note a different issue with respect to the burglary count. In *Dixon*, we held that "when a merger error benefits a defendant and the State fails to raise it by cross-appeal, we . . . will exercise our discretion to correct the error upon our own initiative . . . in exceptional circumstances." Id. at 698 (4). Although the State did not raise this issue on cross-appeal, the State points out in its appellate brief that in the order denying Marshall's motion for new trial, the trial court concluded that it had improperly merged Marshall's conviction for burglary under Count 9 with the vacated felony murder conviction in Count 4 and set a date for resentencing. See *Favors v. State*, 296 Ga. 842, 848 (5) (770 SE2d 855) (2015) ("The

burglary count . . . does not merge with malice murder as a matter of law, because each crime by definition requires proof of an element that the other does not."). However, before the resentencing hearing could take place, Marshall filed a notice of appeal divesting the trial court of jurisdiction. Although we decline to exercise our discretion under these circumstances to correct the merger error, nothing in this opinion should be read to preclude the trial court from doing so upon return of the remittitur. See OCGA § 17-10-1 (f) (sentencing court has jurisdiction to modify or vacate any sentence "within 120 days after receipt by the . . . court of the remittitur upon affirmance of the judgment after direct appeal").

Additionally, Marshall argues, and the State concedes, that the possession of a firearm during the commission of a felony count (Count 11) should have merged into the possession of a firearm by a convicted felon during the commission of another felony count (Count 13). See *Atkinson*, 301 Ga. at 521 (2). We agree, and we therefore vacate Marshall's conviction and five-year sentence for possession of a firearm during the commission of a felony (Count 11).

Finally, Marshall asserts that the trial court erred by merging the aggravated battery count into the attempted murder count because *Zamudio v. State*, 332 Ga. App. 37, 48 (7) (771 SE2d 733) (2015), requires the opposite — that the attempted murder count merge into the aggravated battery count. However, *Zamudio* was recently overruled by our decision in *Priester v. State*, 309 Ga. \_\_\_, \_\_\_ (3) (\_\_\_ SE2d \_\_\_) (2020), which held that "aggravated battery merges into the greater offense of attempted murder when the crimes are predicated upon the same conduct[,]" as they are here.[3] Accordingly, we conclude that Marshall was properly sentenced in this regard.

3. We turn next to Marshall's claim that the trial court erred in sentencing him as a recidivist under OCGA § 17-10-7 (c). The record shows that before trial, the State filed a notice of intent to seek recidivist punishment of Marshall pursuant to OCGA § 17-10-

---

[3] Although Marshall was sentenced prior to our decision in *Priester*, changes in judicial interpretation of statutory law presumptively apply to all cases in the direct appeal pipeline. See *Murphy v. Murphy*, 295 Ga. 376, 379 (761 SE2d 53) (2014).

7 (a) and (c) based on four prior out-of-state felony convictions. The State also filed a separate notice of intent to seek a sentence of life without the possibility of parole in the event Marshall was found guilty of malice murder or felony murder. At the presentence hearing, after the State tendered into evidence certified copies of four Alabama felony convictions, trial counsel conceded that, "in light of the fact that the State did file its recidivist notice and the verdict, we do understand that there's not much discretion the Court has. There's no argument for the defense to make in regards to sentencing[.]" The trial court thereafter expressly sentenced Marshall as a recidivist under OCGA § 17-10-7 (a) and (c).[4]

On appeal, Marshall contends that the trial court erred in imposing recidivist sentencing because two of the four Alabama

---

[4] Subsection (a) of the statute requires a sentence for "the longest period of time prescribed for the subsequent offense." *Blackwell v. State*, 302 Ga. 820, 830-31 (4) (809 SE2d 727) (2018) (punctuation omitted). "[S]ubsection (c) requires the recidivist to serve the maximum time provided in the sentence of the judge and not be eligible for parole." Id. at 830 (4) (punctuation omitted).[5] Marshall's analogy to a claim of insufficiency of the evidence is misplaced, as he is not challenging the validity of the evidence supporting his convictions in this case; rather, he challenges the validity of his sentences based on prior convictions.

felony convictions proffered by the State do not constitute "crimes which if committed within this state would be felonies," as required by OCGA § 17-10-7 (c). Marshall did not raise this claim in the trial court, either at the presentence hearing or in his motion for new trial, and his trial counsel affirmatively waived any objection to using the Alabama felony convictions by stating the defense had no argument to make against recidivist sentencing. Nevertheless, relying on *von Thomas v. State*, 293 Ga. 569, 573-74 (2) (748 SE2d 446) (2013), Marshall now asserts that he has not waived this claim because it "challenges 'the effect or use of the prior convictions'" and is therefore like a challenge to the sufficiency of the evidence supporting his recidivist sentences, which he claims can be asserted for the first time on appeal.[5]

In considering Marshall's recidivist sentences, we start with the principle that as a general matter, "[e]rrors not raised in the trial

---

[5] Marshall's analogy to a claim of insufficiency of the evidence is misplaced, as he is not challenging the validity of the evidence supporting his convictions in this case; rather, he challenges the validity of his sentences based on prior convictions.

court will not be heard on appeal." *Carruth v. State*, 290 Ga. 342, 344-45 (2) (721 SE2d 80) (2012). Nevertheless, the sentencing court has jurisdiction to vacate a void sentence at any time, and the failure to object at trial does not waive such a claim. See *von Thomas*, 293 Ga. at 571 (2). But "[w]hen the sentence imposed falls within the statutory range of punishment, the sentence is not void, and is not subject to post-appeal modification beyond that provided in OCGA § 17-10-1 (f)."[6] *Jones v. State*, 278 Ga. 669, 670 (604 SE2d 483) (2004). Here, Marshall's sentences all were within the statutory range of punishment. See OCGA §§ 16-5-1 (e) (1) ("A person convicted of the offense of murder shall be punished by death, by imprisonment for life without parole, or by imprisonment for life."); 16-4-6 (a) ("A person convicted of the offense of criminal attempt to commit [murder] shall be punished by imprisonment for not less than one

---

[6] That provision states, in relevant part: "Within one year of the date upon which the sentence is imposed . . . , the court imposing the sentence has the jurisdiction, power, and authority to correct or reduce the sentence and to suspend or probate all or any part of the sentence imposed." OCGA § 17-10-1 (f).

year nor more than 30 years.").[7]

Moreover, because Marshall does not contest that two of his four prior Alabama convictions qualified as felonies for purposes of recidivist sentencing, he cannot show that the State failed to meet the requirements for recidivist sentencing under OCGA § 17-10-7 (a). That subsection provides that where a convicted felon has at least one prior qualifying felony conviction, he "shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted[.]" Therefore, Marshall cannot contest that a sentence of life in prison for malice murder[8] and a 30-year sentence for criminal attempt to commit murder were mandated under OCGA § 17-10-7 (a).

Although the trial court further sentenced Marshall to life

---

[7] Marshall's argument regarding recidivist sentencing does not affect his remaining convictions. His 15-year consecutive sentence for possession of a firearm was mandated under OCGA § 16-11-133 (b), without regard to his prior criminal history, and his conviction for the lesser included offense of criminal trespass, which is punishable as a misdemeanor under OCGA § 16-7-21 (d), was not subject to recidivist sentencing.

[8] See *Blackwell*, 302 Ga. at 828-31 (4) (upholding recidivist sentence of life in prison for murder under OCGA § 17-10-7 (a), but rejecting argument that subsection mandates a sentence of life without parole).

*without parole* for murder, the court did not have to rely on OCGA §

17-10-7 (c) to impose that condition. Subsection (c) mandates that a

defendant previously convicted of three qualifying felonies serve the

maximum sentence for all subsequent felonies without parole, but

OCGA § 16-5-1 (e) (1) expressly authorizes a sentence of life without

parole for a malice murder conviction, regardless of the defendant's

prior criminal history. See also OCGA § 17-10-1 (b) ("The judge, in

fixing the sentence as prescribed in subsection (a) of this Code

section, may make a determination as to whether the person being

sentenced should be considered for parole prior to the completion of

any requirement otherwise imposed by law relating to the

completion of service of any specified time period before parole

eligibility."). The trial court thus was authorized to impose the

sentences it did even without taking into consideration the State's

request for recidivist punishment and the evidence presented in

support of that request.[9] And under these circumstances where the

---

[9] In reaching this conclusion, we express no opinion as to whether, in a situation where the imposition of a sentence without parole is *not* otherwise

trial court was permitted by other statutes to impose the sentences that it did, even if the trial court labored under the mistaken impression that Marshall was not eligible for parole under OCGA § 17-10-7 (c), that would amount to a mistake of law but would not result in a void sentence. See *Jones*, 278 Ga. at 670-71 ("Assertions taking issue with the procedure employed in imposing a valid sentence or questioning the fairness of an imposed sentence do not allege a sentence is void and therefore are not a means for post-appeal, post-§ 17-10-1 (f) sentence modification.").

Accordingly, because Marshall's sentences fell within the statutory range of punishment for the crimes of which he was

---

expressly authorized by statute, a defendant may, by failing to raise a timely objection, waive the argument that the trial court erred in imposing recidivist sentencing under OCGA § 17-10-7 (c) because his prior federal or out-of-state sentences would not constitute felonies under Georgia law. See *Nordahl v. State*, 306 Ga. 15 (829 SE2d 99) (2019) (adopting formal and modified categorical approaches for determining under OCGA § 17-10-7 when a federal or out-of-state felony conviction "which if committed within this state would be a felony"); *von Thomas*, 293 Ga. at 573-74 (2) (discussing waiver of claims of improper recidivist sentencing under OCGA § 17-10-7 in the context of a sentence for unlawful possession of methamphetamine); *Butler v. State*, 354 Ga. App. 473, 480-81 (4) (841 SE2d 162) (2020) (applying *Nordahl* analysis in the first instance on appeal to recidivist sentence for violation of the Georgia Controlled Substances Act).

convicted, his sentences were not void and thus Marshall was required to raise any sentencing errors in the trial court to preserve them for review on appeal. In this instance, Marshall's trial counsel not only failed to object, he affirmatively waived any objection to the use of the Alabama felonies, and we conclude that Marshall waived his claim that the trial court improperly used two of the Alabama felonies to support the recidivist sentences. As Marshall has offered no other basis on which this Court could conclude that his claim is not waived, nor do we discern one, we determine no basis for vacating Marshall's recidivist sentences.

4. Marshall also argues that the trial court committed plain error by failing to inquire whether his Alabama felony convictions would be felonies if committed within this state. However, in Georgia, plain-error review is confined to

> the sentencing phase of a trial resulting in the death penalty, a trial judge's expression of opinion in violation of OCGA § 17-8-57, and a jury charge affecting substantial rights of the parties as provided under OCGA § 17-8-58 (b), and, for cases tried after January 1, 2013, with regard to rulings on evidence, a court is allowed to consider plain errors affecting substantial rights although

such errors were not brought to the attention of the court. OCGA § 24-1-103 (d).

*Keller v. State*, 308 Ga. 492, 497 (2) (a) (842 SE2d 22) (2020) (citation and punctuation omitted). See also *Ross v. State*, 296 Ga. 636, 639 (2) n.6 (769 SE2d 43) (2015). Absent a specific provision by the General Assembly, we decline to extend plain-error review to other categories of claimed error.[10] Id. This enumeration thus fails.

*Judgment affirmed in part and vacated in part. All the Justices concur.*

---

[10] Marshall argues that because Georgia has adopted the federal approach to plain error, plain-error review applies at sentencing. However, while plain-error review applies to the miscalculation of sentences imposed pursuant to the United States Sentencing Guidelines, such review is specifically permitted under Federal Rule of Criminal Procedure 52 (b). See *Rosales-Mireles v. United States*, ___ U.S. ___ (I) (B) (138 SCt 1897, 201 LE2d 376) (2018). "[T]here is no Georgia state equivalent" of that rule. *Gates v. State*, 298 Ga. 324, 328 (4) (781 SE2d 772) (2016).

Decided September 8, 2020.

Murder. Fulton Superior Court. Before Judge Adams.

*Jacob D. Rhein*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark S. Lindemann, Assistant Attorney General*, for appellee.