FINAL COPY
294 Ga. 618

S13A1504.  BENSON v. THE STATE.

THOMPSON, Chief Justice.

Appellant Franklin Benson appeals his convictions for malice murder and other crimes relating to the death of Leslyan Williams.[1]  On appeal, he contends that the evidence is insufficient to support his convictions, that the trial court erred in closing the courtroom during voir dire, and that his trial counsel provided constitutionally ineffective assistance.  Because these issues are without merit or are procedurally barred, we affirm his convictions.

1.    Viewed in the light most favorable to the verdict, the evidence presented at trial showed the following:  Appellant and the victim became

---

[1] The crimes occurred on or about October 30, 2007.  On January 4, 2008, appellant was indicted by a Newton County grand jury for malice murder, the removal of body parts from the scene of death or dismemberment, and concealing the death of another.  On October 17, 2009, a jury found him guilty on all counts.  On October 30, 2009, the trial court sentenced appellant to life in prison for malice murder, 12 consecutive months in prison for the removal of body parts, and ten consecutive years in prison for concealing the death of another.  On October 30, appellant filed a motion for new trial, which he amended four times, the last amendment being on October 26, 2012.  The trial court denied the motion for new trial, as amended, on March 18, 2013. Appellant filed a timely notice of appeal.  The case was docketed in this Court for the September 2013 term and submitted for decision on the briefs.

romantically involved in 2007, and appellant began spending several nights a week at a home that the victim had purchased in DeKalb County. The victim had family and friends with whom she regularly communicated; was in apparent good health; held a job; was remodeling her home so that she could start a catering business there; and regularly worked in her yard.

Appellant, who operated an automobile repair business near the victim's home, was having financial difficulties with that business in 2007 and had borrowed over $10,000 from the victim. On the morning of Saturday, October 27, 2007, both appellant's sister, Cassandra, and the victim's sister called the victim to wish her a happy birthday. The victim told them that appellant was taking her to a casino in Mississippi for the weekend, and she told her sister, with whom she frequently spoke, that she would call her on Monday. Appellant and the victim, however, did not go to Mississippi.

Around noon on October 28, 2007, appellant and the victim had a domestic dispute over the money that appellant had borrowed from the victim. The police responded to the victim's home, but, because no violence had occurred, the police left after questioning appellant and the victim. About 6:00 p.m. on October 28, appellant called his bank to check on his account, which

was overdrawn. At 7:32 p.m. that day, the victim's credit card was swiped on the credit card machine at appellant's business. Whoever swiped the card attempted to transfer $7,500 from the victim's account, but the bank declined the transfer because the amount exceeded the transfer limit on the card.

On Monday morning, October 29, the victim was scheduled to meet with Cassandra to go to a job fair. The victim, however, did not meet with Cassandra and did not answer her cell phone. The victim also did not call her sister, as she had promised to do. Appellant did not start work at his regular hour that Monday and could not be reached on his cell phone.

In the early morning hours of Tuesday, October 30, human body parts were found scattered around a secluded, wooded area near a house owned by appellant in Newton County. A coroner examined the remains and determined that the cause of death was homicide by unknown cause. It was not until November 9, 2007, that law enforcement officials identified the body parts as belonging to the victim. Meanwhile, appellant never reported her missing, began moving out of her house on November 3, and told conflicting stories about her disappearance and his activities around that time.

He also told law enforcement officers that the victim was selling drugs

3

from her house, and he asked another sister, Jennifer, to tell officers the same thing. Jennifer, however, would not do so, because it was not true, and the victim's friends and family said that she had never sold drugs. Moreover, appellant asked Jennifer to tell law enforcement officers that he never lived with the victim.

A white, powdered substance that the police found in the victim's house turned out to be sheetrock powder. In addition, about 8:00 a.m. on October 29, 2007, a video camera at a hotel in Chattanooga, Tennessee, recorded appellant towing the victim's car into the hotel parking lot and leaving it. The victim's car keys were later found at appellant's business.

On appeal, appellant contends that the evidence is insufficient to support his convictions because the State did not prove malice or the corpus delicti beyond a reasonable doubt. We disagree.

The State, of course, must prove malice beyond a reasonable doubt to convict someone of malice murder. See OCGA § 16-5-1 (a) ("A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being."). "Express malice is that deliberate intention unlawfully to take the life

4

of another human being which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart." Id. at (b). "'It is for a jury to determine from all the facts and circumstances whether a killing is intentional and malicious.'" Shaw v. State, 292 Ga. 871, 872 (742 SE2d 707) (2013) (citation omitted). And "it is for the jury, not appellate judges, to 'resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient.'" Butler v. State, 292 Ga. 400, 402 (738 SE2d 74) (2013) (citation omitted).

To sustain a conviction for malice murder, the State must also prove the corpus delicti beyond a reasonable doubt, and it "may be shown by indirect as well as direct evidence." Richardson v. State, 276 Ga. 548, 549 (580 SE2d 224) (2003). The corpus delicti is established by proof "'that the person alleged in the indictment to have been killed is actually dead, and second, that the death was caused or accomplished by violence, or other direct criminal agency of some other human being.'" Id. (citation omitted). Even in cases in which a victim's body has not been found, "evidence that the victim was a person with

5

personal relationships that uncharacteristically seemed to have been abandoned supports a finding that the victim has died by criminal means." Hinton v. State, 280 Ga. 811, 816 (631 SE2d 365) (2006). Similarly, we have held that where a coroner could not determine the cause of death of a victim whose body was badly decomposed and partially eaten, the State proved the corpus delicti beyond a reasonable doubt based on evidence that the victim, when she was last seen alive, was

> in apparent good health, and with nothing to show any mental disturbance, . . . she parted on the street from a companion, indicating to the latter that she would be back in a few minutes. She did not return. About nine days later her body was found in a secluded spot in a ditch covered over with corrugated paper on which bricks lay. Some of her front teeth were missing, and were found near the body.

Wrisper v. State, 193 Ga. 157, 161 (17 SE2d 714) (1941).

Here, viewing the evidence in the light most favorable to the verdict, we conclude that it was sufficient to authorize a rational jury to find beyond a reasonable doubt that appellant killed the victim intentionally and unlawfully and that the victim died from some criminal agency and not from natural causes. In sum, the State proved malice and the corpus delicti beyond a reasonable doubt, and the evidence was sufficient to authorize a rational jury to find that the

6

State had excluded every reasonable hypothesis other than appellant's guilt and to find him guilty beyond a reasonable doubt of the crimes for which he was convicted and sentenced. See former OCGA § 24-4-6 (now codified at OCGA § 24-14-6 in the new Evidence Code); Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant argues that the trial court erred in closing the courtroom during voir dire, which resulted in several of his family members and others being improperly excluded from voir dire.[2] Appellant, however, did not object to the closure at trial and thus is procedurally barred from raising the issue on appeal. See State v. Abernathy, 289 Ga. 603, 611 (715 SE2d 48) (2011) (holding that when a defendant fails to object to the closure of a courtroom at trial, "the issue of closure may only be raised in the context of an ineffective assistance of counsel claim" (citation and punctuation omitted)).

3. Appellant contends that he was denied the effective assistance of counsel and that the trial court therefore should have granted his motion for a

---

[2] The State argues that there was only a partial closure of the courtroom, because, it says, at least two members of the public were allowed to remain in the courtroom during voir dire. The record, however, is unclear on this point, and for purposes of this opinion, we assume that the public was totally excluded from voir dire.

7

new trial.

To prevail on this claim, appellant must show that his counsel performed deficiently and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See <u>Strickland v. Washington</u>, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). "This burden, although not impossible to carry, is a heavy one." <u>Young v. State</u>, 292 Ga. 443, 445 (738 SE2d 575) (2013). Moreover,

> a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

<u>Strickland</u>, 466 U. S. at 697.

(a)     Appellant argues that trial counsel were ineffective by failing to object to the closure of the courtroom during voir dire.    However, appellant has made no showing that the courtroom's closure affected the jury selection process or tainted the ultimate jury chosen.  Appellant therefore has failed to carry his burden to show that, if trial counsel had objected to the closure of the courtroom during voir dire, there is a reasonable probability that the outcome of

the trial would have differed.  See Reid v. State, 286 Ga. 484, 488 (690 SE2d 177) (2010) (addressing the defendant's claim that trial counsel provided ineffective assistance by failing to object to the closure of the courtroom during the testimony of two witnesses and holding that the claim lacked merit because the defendant did not show how the failure to object to the closure resulted in harm).

(b)    Appellant contends that trial counsel were ineffective for withdrawing their written requests to charge the jury on proximate causation and the corpus delicti.  This claim, however, is procedurally barred, because appellant "did not raise it in his motion for new trial and did not obtain a ruling on it by the trial court."  Cowart v. State, 294 Ga. ___ (751 SE2d 399) (2013).

Even if appellant had properly preserved the claim, it would be without merit, because appellant has failed to establish that there is a reasonable probability that the outcome of the trial would have been different if his counsel had not withdrawn the requests to charge.  The trial court charged the jury that the State was required to prove "every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt."  The indictment was available to the jury in the jury room, and it alleged that

9

appellant did "unlawfully with malice aforethought cause the death of Leslyan Williams." The court also charged that to convict appellant of malice murder, the State had to prove beyond a reasonable doubt that appellant unlawfully and with malice caused the death of another human being. The court also instructed the jury that malice constituted "the unlawful intention to kill without justification, excuse or mitigation" and that the jury could find appellant guilty only if, based on the evidence and the court's charge, it found beyond a reasonable doubt that he committed the offenses charged in the indictment.

Because the charge as a whole instructed the jury that the State had to prove beyond a reasonable doubt that Leslyan Williams was dead and that appellant had caused that death by committing a criminal act, the charge adequately instructed the jury on the concepts of corpus delicti and causation. See Richardson, 276 Ga. at 551 (holding that where a charge as a whole instructs the jury that "the State had the burden of proving beyond a reasonable doubt that the victim named in the indictment was dead and that appellant had caused that death by committing a criminal act," the charge adequately instructed the jury on the concept of corpus delicti); Pennie v. State, 292 Ga. 249, 252 (736 SE2d 433) (2013) (holding that trial counsel was not ineffective

10

in failing to request a charge on proximate causation, because, in part, the charge as a whole was "sufficient to inform the jury that, in order to convict Appellant of the felony murder of [the victim], it had to determine that he caused" the victim's death). In light of these charges, the strength of the evidence that appellant caused the victim's death by a criminal act, the fact that appellant's defense was that he was not present when the victim was killed, and the fact that there was no evidence of any unforeseen intervening cause after appellant's criminal conduct, see State v. Jackson, 287 Ga. 646, 654 (697 SE2d 757) (2010) (explaining that "[p]roximate causation imposes liability for the reasonably foreseeable results of criminal . . . conduct if there is no sufficient, independent, and unforeseen intervening cause"), we conclude that there is no reasonable probability that the outcome of the trial would have differed if trial counsel had not withdrawn the request to charge on the corpus delicti and causation.

Judgment affirmed. All the Justices concur, except Hunstein, J., who concurs in judgment only as to Division 2.

11

Decided January 21, 2014 – Reconsideration denied March 3, 2014.

Murder. Newton Superior Court. Before Judge Johnson.

David S. West, for appellant.

Layla H. Zon, District Attorney, Candice L. Branche, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General, for appellee.