300 Ga. 593
FINAL COPY

S16A1661. WISE v. THE STATE.

MELTON, Presiding Justice.

Following a jury trial regarding ninety separate counts of criminal activity, Tamario Wise appeals his convictions for a spree of crimes including murder and armed robbery, contending that the trial court made certain evidentiary errors and that the evidence was insufficient to support one count of armed robbery.[1] For the reasons set forth below, we affirm.

---

[1] On January 21, 2011, Wise was indicted for ninety counts of criminal activity committed against eighteen victims, including one count of malice murder and multiple counts of participation in criminal street gang activity, aggravated assault, armed robbery, hijacking a motor vehicle, rape, aggravated sodomy, kidnapping, kidnapping with bodily injury, false imprisonment, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Following a jury trial ending on October 11, 2012, Wise was found guilty of malice murder and fifty additional counts. After some counts were dead-docketed, some counts were nolle prossed, and some counts were merged, the trial court, on November 19, 2012, sentenced Wise to a total sentence of life without parole for malice murder, fourteen additional life sentences, and 290 years to serve, with all sentences to run consecutively. On October 19, 2012, Wise filed a motion for new trial, and amended it on June 11, 2015. On October 16, 2015, the trial court denied the motion for new trial. On November 23, 2015, the trial court granted Wise's motion for an out-of-time appeal. Thereafter, Wise properly appealed, and his case, submitted on the

1. On appeal, Wise has challenged the sufficiency of the evidence with regard to only a single count of armed robbery, involving the theft of a wedding ring.

Viewed in the light most favorable to the verdict, the record shows that, around 9:30 p.m. on the night of November 22, 2010, Lisa McGraw and her boyfriend, Charles Boyer, returned to McGraw's apartment complex from a short trip to a store. They were walking toward her apartment when Boyer returned to his car to retrieve something he had forgotten. As McGraw continued toward the apartment, she felt a gun placed to her head and heard a voice from behind ordering her not to turn around. McGraw realized that two men were behind her, and that a third man was with Boyer. The men ordered Boyer and McGraw to walk to their apartment and to hand over their keys. McGraw gave the men her purse, and then she and Boyer tried to run away. McGraw made it safely into her neighbor's apartment, but Boyer did not. Chris Miller, a neighbor walking his dog, heard a commotion and saw Boyer holding a grocery bag and facing three robbers. Miller then turned away, but he heard

briefs, was docketed to the September 2016 term of this Court.

three gunshots and ran inside his apartment to call 911. The three men fled the scene. Boyer died from gunshot wounds to the torso. His injuries were consistent with his being in a struggle and trying to block a gun from shooting at him and then being shot again while trying to free himself.

The three men who attacked McGraw and Boyer were Wise, his co-defendant Robert Veal, and his co-indictee Raphael Cross. All three arrived at and left the scene of the murder in a black Toyota Highlander SUV. Wise and Veal were carrying guns. Cross testified that he was with Wise and Veal at the time of the murder, but he stayed behind in the car when the shooting occurred. After they left the scene, Cross told Veal and Wise, "Y'all are going down for what y'all did."

With regard to the armed robbery conviction which Wise challenges, Wise was indicted for the theft of a wedding ring from Angela Fox in her presence. Hannibal Heredia, who is Fox's husband, testified that he was doing yard work on November 27, 2010 at his home in the Benteen Park neighborhood of Atlanta while his wife and his daughter were inside. Two men drove up, approached Heredia in his yard, assaulted him, and forced him inside his home. According to Heredia, the assailants, who were armed, tied up Heredia, his wife, and his

3

daughter, and they stole the Heredias' jewelry and wedding rings. In addition, the assailants stole several flat screen TVs, Heredia's and Fox's cell phones, and their Audi. The Audi and the cell phones were later recovered after police tracked Heredia's phone to an address associated with Fernando Whatley, one of Wise's co-defendants. Because Whatley later recanted at trial, his videotaped confession in which he told police that he participated in this home invasion was played for the jury. Whatley also told investigators that he was assisting Wise in the burglary. Whatley gave police specific details of the crime, including the date, time, items stolen, and the manner in which the victims were tied up and the materials with which they were tied. Heredia's own account of the home invasion matched and corroborated Whatley's statement,[2] although Heredia, himself, never positively identified any of his assailants.

Heredia did not mention his wife's name in his testimony, and Fox,

---

[2] Wise makes no contention that any statements of Whatley were not sufficiently corroborated. See former OCGA § 24-4-8, "[in] felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness." Georgia's new Evidence Code, effective for trials conducted on or after January 1, 2013, also provides that to sustain a felony conviction, the testimony of an accomplice must be corroborated. See OCGA § 24-14-8.

4

herself, did not testify. Detective Velasquez, however, who was one of the initial responders, testified that, on November 27, 2010, he went to the Benteen Park home to investigate. He identified the victims whom he interviewed to include Angela Fox.[3]

Further evidence showed that, in reaction to the crime spree, police put together a task force to find the perpetrators. The police tracked Boyer's missing cell phone to a black Toyota Highlander SUV, which had been abandoned at a MARTA Station. The SUV had been stolen by Wise and another individual a few days before the Boyer shooting. A cigar butt testing positive for Wise's DNA was discovered inside the SUV.

This evidence was sufficient to enable the jurors to find Wise guilty of the murder of Boyer, the armed robbery of Heredia and Fox, and the remaining convictions beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Though Wise argues that there was no evidence that he stole a wedding ring from Fox's presence because Heredia

---

[3] Wise's only contention regarding sufficiency of the evidence is that there was no testimony naming Angela Fox as Heredia's wife, and, because she was never identified at trial, he could not be properly convicted of the theft of her ring. As discussed above, the record belies this contention.

never identified her by name, there was testimony from Detective Velasquez placing her at the scene and identifying her as a victim.

2. Wise contends that the trial court erred by allowing his co-defendant's attorney to conduct a one-on-one identification of Wise during trial. We disagree.

The record shows that, while cross-examining Carl Craven, the victim of an armed robbery by Wise and others, a co-defendant's attorney began to question Craven about his assailants and asked if Wise "looked a little bit like" one of them. Wise immediately objected, and Craven was subjected to voir dire questioning. Outside the presence of the jury, Craven testified that he had never previously been able to identify any of his assailants. Craven did, however, indicate that he remembered enough about the robbery that he would be able to testify whether Wise was similar in height to his assailant. The co-defendant's attorney stated during voir dire that he did not intend to ask for a one-on-one identification. Instead, he merely wanted to ask whether Wise was similar in height to one of the robbers. Over Wise's objection the trial court allowed this line of questioning. Thereafter, the jury was brought back into the courtroom, Wise was asked to stand, and Craven testified that he was similar in height to his

6

assailant.

Wise now contends that this line of questioning amounts to an inherently suggestive one-on-one identification of Wise by the witness. See, e.g., Butler v. State, 290 Ga. 412, 415 (3) (721 SE2d 876) (2012) (a one-on-one showup is inherently suggestive but not necessarily inadmissible). Wise's arguments, however, are based on precedent that does not control his situation because Craven neither participated in a one-on-one showup nor made any identification of his assailant. To the contrary, Craven admitted that he could not identify who actually robbed him. A review of the full transcript shows that this line of questioning allowed Wise, on cross-examination, to get Craven to admit that Wise was much taller than 5'4", the height of the assailant that he had previously reported to police. In fact, Wise was able to elicit Craven's admission that he had made a bad approximation of height, drawing his credibility largely into question. Ultimately, then, the testimony which Wise now challenges benefitted his defense. There was neither error nor harm.

3. Wise contends that the trial court erred by granting neither his motion for mistrial nor his motion to admonish the prosecutor after the prosecutor stated that Veal, Wise's co-defendant, had admitted to a rape that occurred

during the crime spree in which Wise was involved. Wise argues that, since Veal never testified, the prosecutor's statement was improper. We disagree.

The record shows that, in his opening argument, Veal's counsel stated that Veal had admitted to the rape of a woman that happened during a home invasion shortly after Boyer's murder. The prosecutor's argument was proper, as he was simply restating the comment made by Veal's own attorney. Even assuming more than this was required to support the prosecutor's inference, there was actual evidence that Veal committed the rape in question. Veal stipulated to the fact that his DNA matched a rape kit taken from the victim, and Cross testified that he accompanied Wise and Veal on the home invasion and that he witnessed Wise and Veal raping the woman. See Morgan v. State, 267 Ga. 203 (1) (476 SE2d 747) (1996) (deductions made during closing argument may even be absurd as long as the argument does not introduce facts not in evidence). In addition, there was no need to admonish the jury, as requested by Wise. The jury was properly instructed that the argument of counsel was not evidence, and this instruction was sufficient. There was no error.

4. Wise contends that the trial court erred by admitting certain cell phone records that indicated the location of his cell phone at the time of some of the

crimes. We disagree.

The transcript shows that the State called Michael Bosillo, a custodian of records who worked for MetroPCS, as one of its witnesses. A retired police officer, Bosillo was assigned to MetroPCS's subpoena compliance unit, and he testified that he had training that enabled him to examine the cell phone data and determine the cell phone towers on which a cell phone had pinged during use. Bosillo compiled documents that were responsive to a subpoena from the State, including calling records and subscription profiles over which he was the custodian.

At trial and on appeal, Wise has contended that these documents were inadmissible pursuant to Melendez-Diaz v. Massachusetts, 557 U. S. 305 (129 SCt 2527, 174 LE2d 314) (2009). He is incorrect. In Melendez-Diaz, a drug trial, the United States Supreme Court determined that the introduction of affidavits of state laboratory analysts stating that the substance seized from the defendant was determined to be cocaine violated the defendant's Sixth Amendment rights, as the analysts/affiants were not available for cross-examination. See id. at 309-311 (II). See also Crawford v. Washington, 541 U. S. 36 (124 SCt 1354, 158 LE2d 177) (2004). In reaching this conclusion, the

9

United States Supreme Court pointed out that affidavits of this type were the "core class of testimonial statements" covered by the Confrontation Clause. Melendez-Diaz, supra, 557 U. S. at 310 (II) (citation and punctuation omitted).

Melendez-Diaz is not applicable to the present case for several reasons. First and foremost, Bosillo, who compiled the documents in question and was custodian of the records they included, was present at trial and subject to cross-examination. Therefore, the concerns in Melendez-Diaz, all of which centered around the absence at trial of the affiant, are not present here. Moreover, Bosillo testified that he was custodian of the records at MetroPCS, that he pulled the information, and that he was capable of assessing the information to determine the location of cell towers off of which the cell phones pinged. This is not a case in which the State simply offered an incriminating conclusion in the form of an affidavit. To the contrary, the individual who formed the conclusion was present, available at trial, and thoroughly cross-examined. Accordingly, Wise's arguments premised on Melendez-Diaz have no merit.

Judgment affirmed. All the Justices concur.

Decided February 27, 2017.

Murder. Fulton Superior Court. Before Judge Markle.

Deborah L. Leslie, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Joshua D. Morrison, Sr., Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General, for appellee.