**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 14, 2017**

# In the Court of Appeals of Georgia

A17A0940. WHATLEY v. THE STATE.

REESE, Judge.

A Fulton County jury found Fernandez Whatley guilty beyond a reasonable doubt of kidnapping, aggravated assault, two counts of robbery (as lesser included offenses on armed robbery charges), and two counts of false imprisonment.[1] He appeals from the denial of his motion for new trial, contending that the trial court violated his right to a public trial, that he received ineffective assistance of counsel, and that the evidence was insufficient to support his convictions. For the reasons set forth, infra, we affirm.

---

[1] OCGA §§ 16-5-40 (a); 16-5-21 (b) (2); 16-8-40 (a) (1), (2); 16-5-41 (a).

Viewed in the light most favorable to the jury's verdict,[2] the record reveals the following facts. On November 27, 2010, Hannibal Heredia was doing yard work at his Atlanta home while his wife, Angela Fox, and his nine-year-old daughter, A. H., were inside. Two men drove up, approached Heredia, assaulted him, and forced him inside his home. The assailants, who were both carrying guns, tied up Heredia, his wife, and his daughter and stole Heredia's and Fox's jewelry and wedding rings. In addition, the assailants stole several flat screen televisions, Heredia's and Fox's cell phones, and their Audi vehicle. The Audi, televisions, and cell phones were later recovered by law enforcement officers after they tracked Heredia's phone to an address associated with the Appellant. A friend of the Appellant subsequently testified that he saw the Appellant and an unidentified man arrive at a nearby apartment complex in an Audi shortly after the crimes in this case had been committed.

Detective Vincent Velasquez, who worked with the homicide division of the Atlanta Police Department, responded to a 911 call about the crimes at issue (hereinafter, the "home invasion"). The detective believed that the home invasion

---

[2] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

may have been related to a gang-related crime spree that he was investigating; those crimes included a homicide, a rape, armed robberies, and other felonies. After conducting further investigation, Detective Velasquez identified the Appellant and another man, Tamario Wise, as suspects in the home invasion. The detective arrested the Appellant and transported him to the police station, where the detective conducted a custodial interview. According to Detective Velasquez, the Appellant admitted that he went to the home of Heredia and Fox with the intention of committing a robbery and that he tied up Heredia with a scarf, backed Heredia's Audi out of the garage, loaded the televisions into the car, and left the scene in the Audi. Those facts were consistent with Heredia's statements to the detective about the home invasion, as well as Heredia's testimony at the joint trial of the Appellant, Wise, and Robert Veal, a third suspect in the gang-related crime spree.

In a 90-count indictment charging the Appellant, Wise, Veal, and three other individuals with an assortment of violent felonies, the State jointly indicted the Appellant and Wise for participation in criminal street gang activity (based upon the armed robbery of Heredia); the kidnapping of Heredia; the aggravated assault of Heredia; the armed robbery of Heredia and Fox; the false imprisonment of Fox and A. H.; and cruelty to children in the first degree. The jury acquitted the Appellant on

3

the gang-related activity and child cruelty charges, found him guilty on two counts of robbery as lesser included offenses to the armed robbery counts, and found him guilty on the remaining charges. The court denied the Appellant's motion for new trial, and this appeal followed.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[3] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[4]

The standard of *Jackson v. Virginia*, supra, is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes charged.[5] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

---

[3] 443 U. S. at 319 (III) (B).

[4] *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004) (citations omitted).

[5] *Clark v. State*, 275 Ga. 220, 221 (1) (564 SE2d 191) (2002).

1. The Appellant contends that the trial court violated his constitutional right to a public trial[6] by closing the courtroom to the defendants' family members and other observers during voir dire.[7] Although the attorney for the Appellant's co-defendant, Wise, unsuccessfully objected to the alleged closure and moved for a mistrial, the Appellant's attorney did not object, nor did she join Wise's objection or motion. Consequently, any error by the trial court related to the alleged closure is

---

[6] See Ga. Const. of 1983, Art. I, Sec. I, Par. XI (a) ("In criminal cases, the defendant shall have a public and speedy trial by an impartial jury[.]"); see also *Presley v. Georgia*, 558 U. S. 209, 211-212 (130 SCt 721, 175 LE2d 675) (2010) (The right to a public trial rests upon the First and Sixth Amendments to the United States Constitution, both of which are applicable to the individual states via the Due Process Clause of the Fourteenth Amendment. The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ," and this right belongs solely to the accused. Further, the right to a public trial extends to voir dire.) (citation omitted); *Waller v. Georgia*, 467 U. S. 39, 46 (104 SCt 2210, 81 LE2d 31) (1984) (The First Amendment right to a public trial belongs to the press and the public.).

[7] The facts surrounding the alleged closure are discussed in Division 3 (b), infra, wherein we address the related claim of ineffective assistance of counsel.

5

waived,[8] and the issue of closure may only be raised in the context of an ineffective assistance of counsel claim.[9]

2. The Appellant claims that the State failed to present sufficient evidence to support his convictions on Counts 85 and 86 of the indictment. Count 85 charged the Appellant with committing an armed robbery[10] of "Angela Fox" by taking her wedding ring from her persona and immediate presence, while Count 86 charged him with the false imprisonment of "Angela Fox." The Appellant argues that the State failed to present evidence that a woman named "Angela Fox" was present during the home invasion or that he stole a wedding ring from her, because Heredia only referred

---

[8] See *Tolbert v. State*, 321 Ga. App. 637, 638 (1) (742 SE2d 152) (2013) (Even if the trial court improperly excluded the public from the courtroom, the defendant waived appellate review of such exclusion by not objecting to it at trial.); see also *Reid v. State*, 286 Ga. 484, 487-488 (3) (c) (690 SE2d 177) (2010) (The improper closing of a courtroom is a structural error requiring automatic reversal of a conviction only if the defendant objected contemporaneously at trial and then raised the issue on direct appeal. "Indeed, to hold otherwise would encourage defense counsel to manipulate the justice system by intentionally failing to object in order to ensure an automatic reversal on appeal.") (citation omitted).

[9] See *Benson v. State*, 294 Ga. 618, 621 (2) (754 SE2d 23) (2014); *Reid*, 286 Ga. at 487 (3) (c).

[10] On Count 85, the jury found the Appellant guilty of robbery as a lesser included offense of armed robbery.

to her as his "wife" and never stated her name during his testimony. This argument lacks merit.

First, the Supreme Court of Georgia rejected the same argument in its opinion affirming the conviction of the Appellant's co-defendant, Wise.[11] The Appellant has offered no authority or argument that would support a different ruling by this Court.

Second, Heredia testified that his "wife" was present during the home invasion, that one of the assailants tied her up, and that one of them removed his and his wife's jewelry, including their wedding rings. Although Heredia did not mention his wife's name during his testimony, and Fox, herself, did not testify at trial, Detective Velasquez testified that he had interviewed Heredia shortly after the home invasion was committed, that he had conducted further investigation of the home invasion, and that the victims were Heredia, his wife, Angela Fox, and their daughter, A. H.

Thus, we conclude that the evidence, when viewed in favor of the jury's verdict, was sufficient for the jury to find the Appellant guilty beyond a reasonable doubt of the crimes at issue.[12]

---

[11] See *Wise v. State*, 300 Ga. 593, 595-596 (1) (797 SE2d 447) (2017).

[12] See *Rankin*, 278 Ga. at 705.

3. Citing several alleged oversights by his trial counsel before and during trial, the Appellant asserts that he received ineffective assistance of counsel.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.[13] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[14]

"An appellate court evaluates counsel's performance from counsel's perspective at the time of trial. As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel."[15] Further, the burden of demonstrating prejudice that resulted from counsel's deficient performance,

---

[13] *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[14] *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003) (citations and punctuation omitted).

[15] *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001) (citations and punctuation omitted).

8

"although not impossible to carry, is a heavy one."[16] Thus,

> a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [Appellant] as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.[17]

(a) The Appellant claims that he was prejudiced by his counsel's failure to file a motion to sever his trial from that of his co-defendants.

As an initial matter, the Appellant's assertion is not supported by the record, which shows that his counsel filed a comprehensive motion to sever the Appellant's trial from that of his co-defendants as part of a consolidated motion packet in February 2011, almost 20 months before the October 2012 trial. However, there is no

---

[16] *Benson*, 294 Ga. at 622 (3) (citation and punctuation omitted).

[17] *Strickland*, 466 U. S. at 697 (IV).

order by the trial court on this motion in the record. Therefore, for the sake of this appeal, we will address this issue as if counsel had not filed a motion to sever.[18]

> [T]he decision not to file a motion to sever is a matter of trial tactics and the fact that such a motion was not filed does not require a finding that trial counsel was ineffective. A defendant must do more than raise the possibility that separate trials upon the charges against him would have provided him a better chance of acquittal. Such a defendant must make a clear showing of prejudice proximately causing a denial of due process.[19]

In its order denying the Appellant's motion for new trial, the court made the following observations regarding severance in this case:

> While there may have been some theoretical risk that [the Appellant] would be tainted by the charges and actions of his co-defendants, it was equally possible that he would appear less culpable in comparison[.] . . . In fact, based on the Court's observation of the demeanor of the co-defendants versus [the Appellant], the Court concludes that this is exactly what happened.

---

[18] See generally *Harris v. State*, 190 Ga. App. 343, 348 (4) (b) (378 SE2d 912) (1989) ("It is the duty of counsel to obtain a ruling on his [or her] motions or objections, and the failure to do so will ordinarily result in a waiver [of appellate review].") (citations and punctuation omitted).

[19] *Dye v. State*, 266 Ga. App. 825, 827 (2) (a) (598 SE2d 95) (2004) (citation and punctuation omitted).

We find that the record supports the court's conclusion that the joint trial likely benefitted the Appellant by making him appear less culpable than his co-defendants, Wise and Veal. The record shows that Wise and Veal were involved in a violent, gang-related crime spree in the days leading up to the instant crimes. As a result of Wise's participation in those crimes, as well as the home invasion, he was convicted of malice murder, rape, multiple counts of armed robbery and aggravated assault, kidnapping, and several other felonies.[20] Similarly, Veal (who did not participate in the home invasion) was convicted of malice murder, rape, aggravated sodomy, multiple counts of armed robbery and aggravated assault, kidnapping, and multiple other felonies.[21] In contrast, the jury acquitted the Appellant on the charge of participating in gang-related activities and on the child cruelty charge, and the jury convicted him of robbing Heredia and Fox instead of finding him guilty on the more serious armed robberies that were charged in the indictment.

We find that the Appellant has failed to meet his burden of demonstrating that the failure to pursue a severance constituted deficient performance. We also find, based on the record, there is no reasonable probability that the outcome of his trial

---

[20] See *Wise*, 300 Ga. at 594, n. 1.

[21] See *Veal v. State*, 298 Ga. 691, 692, n. 1 (784 SE2d 403) (2016).

11

would have been different if there had been a severance. Thus, he cannot prevail on this ineffective assistance claim.[22]

(b) The Appellant argues that he received ineffective assistance when his counsel failed to object to the closure of the courtroom to the public, including the defendants' family members.

The trial transcript shows the following, undisputed facts. At 11:05 a.m. on October 1, 2012, the trial court brought 75 prospective jurors into the courtroom; administered the oath to them; gave them preliminary instructions; read the entire 90-count indictment to them; and questioned them en banc to ensure that they all met the minimum legal qualifications to serve as a juror in the case.[23] Then, after noting that it was "just past noon," the court dismissed the prospective jurors for lunch.

---

[22] See *Dye*, 266 Ga. App. at 827 (2) (a).

[23] See generally *Jordan v. State*, 247 Ga. 328, 338 (6) (276 SE2d 224) (1981) ("There are two types of challenges to an individual juror for cause: (1) for principal cause, and (2) for favor. Challenges for principal cause are based on facts which, if proved, automatically disqualify the juror from serving. Challenges for favor are based on admissions of the juror or facts and circumstances raising a suspicion that the juror is actually biased for or against one of the parties.") (citations omitted); OCGA §§ 15-12-163 (challenges for cause); 15-12-164 (disqualification based upon bias).

Moments later, a court bailiff appears to have admonished the three defendants and their attorneys on the record, as follows:

> Just [to] be clear, I thought instructions were given that no family members would be allowed today because there is no room [in the courtroom]. Please don't take it to the family and tell them to ask me because the answer is still no. We don't have any room. It will not be allowed today. No room will be allowed for family members until the jury selection is over.

The prosecutor responded that this announcement was the first time he had heard of the bailiff's actions in excluding people from the courtroom. He noted, however, that there was "absolutely no space for anyone to sit" in the courtroom, that each bench was completely filled with prospective jurors sitting "shoulder-to-shoulder," that the jury box was filled, and that there were no empty chairs. The prosecutor also stated that the case involved gang-related crimes and several witnesses had been attacked in jail, so there were extreme security issues to be considered, as well as the possibility of creating a fire hazard by admitting more people into the courtroom.

Although the Appellant's counsel did not object to the exclusion of the public from the courtroom, Wise's attorney objected and moved for a mistrial based on the violation of Wise's right to an open, public trial. The trial court denied the motion for

mistrial after considering the following, undisputed facts: neither the trial court judge nor the prosecutor was aware that the bailiff was excluding people from the courtroom; the State had not filed a motion to close the courtroom; the judge had not ordered the courtroom to be closed or ordered the bailiff to exclude anyone; the bailiff was either acting on his own initiative or on the instructions of his superior officer, not the judge; the doors to the courtroom were not locked during the approximately one-hour period at issue; the courtroom had no available seating for additional individuals during that time; and no one was asked to leave once they were in the courtroom.[24]

In addition, as soon as the judge found out about the situation, he ordered a recess and then reconvened the trial in a different, larger courtroom that accommodated the family members and other observers.[25] The judge explained the

---

[24] Although the record shows that, at approximately 4:00 p.m. on the first day of voir dire, a deputy told Wise's mother to leave the courtroom, the transcript shows that her ejection was the result of a verbal altercation she had with the deputy and not a closure of the courtroom. Other family members of Wise were allowed to remain in the courtroom, and his mother was allowed to return the next day. The Appellant's attorney did not object to the ejection of Wise's mother from the courtroom, and there is no evidence that any of the Appellant's family members were ever excluded from the courtroom.

[25] Cf. *Presley*, 558 U. S. at 210-216 (The trial court excluded the public from the courtroom during voir dire because the courtroom was full. The defendant's

14

reasons for the room change to the prospective jurors when voir dire was recommenced. The judge also provided copies of the indictment to the three co-defendants' family members, as they had not been present when he read the indictment to the prospective jurors. The Appellant's counsel did not object to the actions taken by the judge to remedy the situation.[26]

counsel objected to the closure and asked the court to make necessary accommodations, but the court overruled the objection and refused to make any changes in its procedures that would have allowed the public to observe jury selection. Although Georgia's appellate courts found that the court's decision did not constitute reversible error, the Supreme Court of the United States disagreed, ruling that the trial court violated the defendant's Sixth Amendment right to a public trial by excluding the public without considering all reasonable alternatives to closure.); *Purvis v. State*, 288 Ga. 865, 868-869 (1) (708 SE2d 283) (2011) (Although the trial court did not specifically order the exclusion of the public from the courtroom during the defendant's trial, the court deliberately decided to hold the trial in a county jail courtroom, thereby relinquishing to jail officials control of the public's access to the courtroom. Thus, the trial court violated the defendant's Sixth Amendment right to a public trial by failing to take reasonable measures to accommodate the public's presence during the trial.).

[26] Further, Wise's attorney did not renew his motion for mistrial after the court remedied the situation. Consequently, even if the Appellant's counsel had joined Wise's motion for mistrial, appellate review of the denial of that motion was waived. See generally *McCoy v. State*, 273 Ga. 568, 572 (8) (544 SE2d 709) (2001) (Where the court gave a curative instruction following a motion for mistrial, and the defendant neither objected to the curative instruction nor renewed his motion for mistrial, the alleged error was not preserved for appellate review.).

Although the Appellant argues that his counsel should have objected to the closure, he cannot show that there is a reasonable probability that the trial court would have sustained the objection. As shown above, Wise's counsel did, in fact, object to the closure and move for a mistrial, and the court overruled the objection and denied the motion. The Appellant has not articulated any reason to support a finding that the court would have sustained the same objection if it had been raised by his counsel.[27]

Further, "where, as here, the issue of a courtroom closure is raised in the context of an ineffective assistance of counsel claim, prejudice will not be presumed."[28] As the trial court found, the Appellant failed to articulate any prejudicial impact from counsel's failure to object. The transcript shows that the actual process of selecting a jury had not started; the court had asked the statutory questions to determine if anyone was unqualified to serve, but the attorneys had not questioned the panels or individual potential jurors. Further, there is no evidence that the closure

---

[27] See *Dye*, 266 Ga. App. at 829 (2) (b); see also *Hampton v. State*, 295 Ga. 665, 670 (2) (763 SE2d 467) (2014) ("[T]he failure to make a meritless motion or objection does not provide a basis upon which to find ineffective assistance of counsel.") (citation omitted).

[28] *Reid*, 286 Ga. at 488 (3) (c) (citations omitted).

affected the jury selection process or tainted the ultimate jury chosen, nor is there any evidence of misconduct or a miscarriage of justice that occurred during that one-hour period that would have demonstrated reversible error.[29]

Thus, the Appellant has failed to carry his burden of showing that, if trial counsel had objected to the closure of the courtroom during voir dire, there is a reasonable probability that the outcome of the trial would have been different.[30]

(c) The Appellant contends that his counsel was ineffective for failing to object to the court's decision to allow the State to present the testimony of Detective Velasquez to rebut his (the Appellant's) trial testimony after the State had rested its case-in-chief.

As shown in the facts outlined above, as part of the State's case-in-chief, Detective Velasquez testified at length about the Appellant's custodial interview, during which the Appellant admitted that he had participated in the home invasion and had left the scene with the victims' televisions and Audi. After the State rested, the Appellant testified in his own defense and repeatedly denied that he was present during, or had participated in, the home invasion. When questioned about how he had

---

[29] See *Benson*, 294 Ga. at 622 (3) (a); *Reid*, 286 Ga. at 488.

[30] See *Benson*, 294 Ga. at 622 (3) (a).

known the details of the home invasion during the custodial interview if he had not been present when it was committed, the Appellant testified that Detective Velasquez had told him specific details about the crimes while driving him to the police station following his arrest. The Appellant also claimed that, before the custodial interview, Detective Velasquez threatened to charge him with the murder, rape, and other crimes his co-defendants had committed unless he confessed to participating in the home invasion.

The State then re-called Detective Velasquez as a witness to rebut the Appellant's testimony that the detective had secretly and intentionally given him all the information in an effort to get him to confess to the home invasion. The detective denied that he had told the Appellant any details about the home invasion, or the murder and other crimes under investigation, while transporting him to the police station or at any time other than during the custodial interview.

The Appellant contends that his trial counsel should have objected when the State called the detective as a rebuttal witness because the State used the opportunity to present new evidence to the jury, i.e., the recording and transcript of the entire custodial interview. Pretermitting whether that objection had merit, the trial transcript shows that the Appellant's trial counsel did, in fact, object to the rebuttal evidence on

18

that basis. The court overruled the objection, ruling that the State could recall Detective Velasquez for the limited purpose of addressing the Appellant's assertions about what the detective said to him before the custodial interview and his claim that the detective had coerced him into confessing to the home invasion. Further, the court ruled that the Appellant had been questioned and cross-examined extensively about his statements during the interview and, because the Appellant had made his coercion claim a central issue of the trial, the jury was entitled to consider the entire interview.

We find that the court did not abuse its discretion in admitting the rebuttal evidence.[31] It follows that, because an objection to the evidence would have been futile, the Appellant has failed to meet his burden of demonstrating ineffective assistance of counsel.[32]

---

[31] See *Smith v. State*, 292 Ga. 620, 625 (7) (740 SE2d 158) (2013) ("Trial courts have broad discretion in deciding whether to permit the State to introduce testimony after the defendant has closed his evidence. Absent an abuse of that discretion, we will not reverse a decision to allow such testimony, even if it was not strictly in rebuttal.") (citation omitted).

[32] See *Burke v. State*, 316 Ga. App. 386, 389 (1) (a) (729 SE2d 531) (2012) ("Failure to make a meritless or futile objection or motion cannot be evidence of ineffective assistance.") (punctuation and footnote omitted).

(d) The Appellant contends that his trial counsel failed to move to suppress his custodial statements to Detective Velasquez on the basis that his *Miranda*[33] rights had been violated. He bases this argument on his claim that, before Detective Velasquez advised him of his *Miranda* rights and interviewed him at the police station, the detective told him the details of the home invasion and tried to coerce him into confessing to the crimes.[34] According to the Appellant, this constituted an impermissible "two-stage" questioning tactic in which "police first question a suspect without administering *Miranda* warnings, gain a statement from the suspect, then administer *Miranda* warnings, and have the suspect repeat that which the suspect has already related, often with little interruption in time."[35] The Appellant argues that, if counsel had objected to the admission of his custodial statements on that basis, the trial court would have excluded them.

---

[33] See *Miranda v. Arizona*, 384 U. S. 436, 478-479 (III) (86 SCt 1602, 16 LE2d 694) (1966).

[34] See Division 3 (c), supra.

[35] *State v. Pye*, 282 Ga. 796, 799 (653 SE2d 450) (2007) (footnote omitted).

Even assuming, without deciding, that the Appellant preserved this issue below,[36] we find that the record does not support the Appellant's argument. It shows that counsel filed a motion to suppress the statements as part of a pretrial consolidated motions packet. The motion specifically asserted that the statements were inadmissible because the Appellant's *Miranda* rights had been violated, and it requested a *Jackson-Denno*[37] hearing to determine the voluntariness of the statements. The court conducted the hearing, during which Detective Velasquez testified that he gave the Appellant a *Miranda* warning before the Appellant made any statements about the home invasion, he did not threaten the Appellant or promise him anything in exchange for the admissions, and the Appellant never requested an attorney during the interview. The detective also specifically denied that, prior to the interview, he asked the Appellant any questions or had any conversation with him, other than telling him that he was being detained and that they were going to the police station

---

[36] See *McGlocklin v. State*, 292 Ga. App. 162, 163 (664 SE2d 552) (2008) ("A defendant must raise all allegations of ineffective assistance of counsel as soon as practicable [and when] new counsel raises the issue of trial counsel's ineffectiveness on motion for new trial, any ineffective assistance of trial counsel claims not raised at that time are waived.") (footnotes omitted).

[37] See *Jackson v. Denno*, 378 U. S. 368, 394-395 (IV) (84 SCt 1774, 12 LE2d 908) (1964).

because the detective wanted to talk to him about a robbery. The Appellant did not testify during the hearing, but his trial counsel argued that the Appellant's confession was involuntary and coerced because he believed that the detective would charge him with the murder, rape, and other crimes committed by his co-defendants if he did not confess to the home invasion. After hearing the evidence and argument, the court denied the motion to suppress.

We conclude that the evidence presented does not support a finding that Detective Velasquez conducted an impermissible "two-stage" interrogation of the Appellant.[38] It follows that trial counsel's performance cannot be deemed deficient based upon her failure to raise a meritless objection to the admission of the Appellant's custodial statements.[39] Further, trial counsel adequately raised and argued that the Appellant's statements had been coerced and should be suppressed, and the Appellant has failed to show that the trial court erred in rejecting that argument and

---

[38] See *Pye*, 282 Ga. at 799.

[39] See *Hampton*, 295 Ga. at 670 (2).

finding that the statements were admissible.[40] Consequently, the Appellant cannot prevail on this ineffective assistance claim.

(e) The Appellant claims that his counsel improperly encouraged him to testify at trial. This claim lacks merit.

During the motion for new trial, trial counsel testified that the Appellant had consistently told her that he was innocent of the charges, that he was not present during the crimes at issue, and that Detective Velasquez had told him the details of the crimes before coercing his confession. She testified that, because the trial court had denied the motion to suppress, she believed that the Appellant's custodial statement was going to be presented to the jury regardless of whether the Appellant testified. As a result, she believed the jury needed to hear the Appellant's explanation for why he admitted to the crimes, i.e., how he knew about the home invasion and how the detective had coerced him into confessing. According to counsel, she spoke with the Appellant several times before trial and, after discussing the "pros and cons"

---

[40] See *Whittle v. State*, 282 Ga. App. 64, 66 (637 SE2d 800) (2006) ("When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them.") (citation and punctuation omitted).

of him testifying, believed that it was in his best interest to testify because "he had a story to tell. . . . [The Appellant] was believable to me. And I didn't have an issue . . . with the way he presented himself to me [or how] he would present himself to the jury." The Appellant did not testify during the motion for new trial hearing and, thus, did not present any evidence to contradict his counsel's explanation for how and why they reached this strategic decision. In addition, the trial transcript shows that the trial court questioned the Appellant about whether he was going to testify and thoroughly advised him of his rights before he testified.

In denying the Appellant's motion for new trial, the court concluded that trial counsel made a reasonable strategic decision to encourage the Appellant to testify about the coercion that occurred before the custodial interview,[41] and that it was the Appellant who made the final decision to testify and he did so voluntarily.[42] Because

---

[41] See *Moreland v. State*, 263 Ga. App. 585, 588 (4) (588 SE2d 785) (2003) ("The decisions on which witnesses to call and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his [or her] client.") (citation and punctuation omitted); see also *Grier*, 273 Ga. at 365 (4).

[42] See *Potter v. State*, 273 Ga. 325, 327-328 (540 SE2d 184) (2001) ("Whether or not to testify in one's own defense is considered a tactical decision to be made by the defendant himself after consultation with his trial counsel.") (citation and punctuation omitted).

the record supports these conclusions, we find that the trial court properly rejected this ineffective assistance claim.[43]

(f) The Appellant claims his trial counsel provided ineffective assistance by failing to object to a comment on the evidence by the trial court judge. We disagree.

The trial transcript shows that, during the State's cross-examination of the Appellant, the prosecutor repeatedly questioned him about his claim that he did not participate in the home invasion and only knew specific details about it because Detective Velasquez had told him all about the crimes prior to the custodial interview. In the midst of the cross-examination, the Appellant's trial counsel interjected with a request to approach the bench. The judge responded, "No, no. I don't need to hear anything more. He's got him on cross, and he's impeaching him with his statements, so . . ." Trial counsel did not object to the judge's comment, but he did object to the prosecutor's attempted impeachment, arguing that the Appellant's testimony about what the detective said to him before and during the interview constituted inadmissible hearsay. The court overruled the objection, and the prosecutor's cross-examination of the Appellant continued.

_____

[43] See id. at 328 (affirming the trial court's determination that the Appellant's allegation of ineffective assistance was without merit, because there was evidence to support the finding).

OCGA § 17-8-57 (a) (1)[44] provides that "[i]t is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused." The defendant's trial counsel must timely object to a suspected violation of the statute and must "inform the court of the specific objection and the grounds for such objection, outside of the jury's hearing and presence."[45] Otherwise, appellate review will be limited to whether the judge's comments violated the statute and, if so, whether the violation constituted plain error that affected the substantive rights of the parties.[46]

---

[44] In 2015, the Georgia General Assembly amended OCGA § 17-8-57, and that provision became effective on July 1, 2015. See Ga. L. 2015, p. 1050, § 1. Although the trial in this case took place in October 2012, the instant appeal was not docketed in this case until January 9, 2017. Because OCGA § 17-8-57 is a procedural law and it does not provide otherwise, the appellate courts will apply the law as it exists at the time the appeal is decided. See *Quiller v. State*, 338 Ga. App. 206, 208-209 (789 SE2d 391) (2016). Thus, the current version of OCGA § 17-8-57 applies in this case.

[45] OCGA § 17-8-57 (a) (2). We note that, under former OCGA § 17-8-57, counsel was not required to object to an allegedly improper comment by the trial judge in order to preserve the error for appellate review.

[46] OCGA § 17-8-57 (b); but see OCGA § 17-8-57 (c) ("Should any judge express an opinion as to the guilt of the accused, the Supreme Court or Court of Appeals or the trial court in a motion for a new trial shall grant a new trial.").

Given the marked similarity between the language of subsection (a) (1) of the current statute and the first sentence of former OCGA § 17-8-57,[47] as well as the relevant lack of precedent construing the current statute, the opinions of the Supreme Court of Georgia construing the former version provide essential guidance for our determination as to whether the judge's comment in this case violated the statute. As the Supreme Court has repeatedly explained, "former OCGA § 17-8-57 does not generally extend to colloquies between the judge and counsel regarding the admissibility of evidence, because remarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence."[48]

The comment at issue in this case was made by the judge "in the context of a colloquy concerning an evidentiary objection and the ruling of the court on that

---

[47] The first sentence of former OCGA § 17-8-57 provided that "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." "Both the former and current versions of OCGA § 17-8-57 provide that it is error for the trial court to express or intimate his opinion about what has or has not been proved." *Quiller*, 338 Ga. App. at 208.

[48] *Burney v. State*, 299 Ga. 813, 823 (4) (792 SE2d 354) (2016) (citation and punctuation omitted). Accord *Ellis v. State*, 292 Ga. 276, 282 (3) (736 SE2d 412) (2013); *Butler v. State*, 290 Ga. 412, 416 (4) (721 SE2d 876) (2012); *Linson v. State*, 287 Ga. 881, 884 (2) (700 SE2d 394) (2010); *Boyd v. State*, 286 Ga. 166, 168 (3) (686 SE2d 109) (2009).

objection. Accordingly, the statement did not amount to an expression of an opinion of the proof or the guilt of the accused."[49] Moreover, at the close of the trial, the court specifically instructed the jurors as follows: "By no ruling or comment that the court has made during the progress of the trial has the court intended to express any opinion upon the facts of this case, upon the credibility of the witnesses, upon the evidence or upon the guilt or innocence of the defendants." The court also instructed the jurors that they, alone, must determine the credibility or believability of the witnesses, resolve conflicts in the evidence, and determine whether a witness had been successfully impeached.

Under these circumstances, we conclude that the judge's comment did not violate either the current or former version of OCGA § 17-8-57.[50] It necessarily

---

[49] *Ellis*, 292 Ga. at 282 (3) (citation omitted).

[50] See *Burney*, 299 Ga. at 822-823 (4) (The trial court commented, in the jury's presence, that "I think we've heard from the witnesses, the eyewitnesses themselves where people were. I haven't heard any conflicting testimony about that." The Supreme Court ruled that the comment, made in the course of sustaining a co-defendant's objection to the prosecutor's questioning of a police detective, did not constitute a violation of former OCGA § 17-8-57.); see also *Ellis*, 292 Ga. at 282 (3); *Butler*, 290 Ga. at 416 (4).

follows that counsel cannot be deemed ineffective for failing to object to the statement.[51]

(g) In a related enumeration of error, the Appellant complains that his trial counsel improperly delayed his appeal. Specifically, he contends that counsel improperly filed a notice of appeal from his conviction, which removed the trial court's jurisdiction over the motion for new trial that counsel had simultaneously filed with the notice of appeal. This Court dismissed the direct appeal for failure to file a brief, however, and the Appellant's newly-appointed appellate counsel amended the previously filed motion for new trial to assert claims of ineffective assistance of counsel. By the time the trial court ruled on the motion for new trial and the instant appeal was filed in November 2016, the current version of OCGA § 17-8-57 was in effect.[52]

Because, unlike the former version of OCGA § 17-8-57,[53] the current version of the statute requires an objection to an improper comment by the trial court judge

---

[51] See *Hampton*, 295 Ga. at 670 (2).

[52] See footnote 44, supra.

[53] See footnote 45, supra.

in order to preserve it as error,[54] and because trial counsel failed to object, the Appellant contends that trial counsel's error in prematurely filing a notice of appeal delayed the filing of the instant appeal until after the current statute took effect, thereby constituting ineffective assistance.

In Division 3 (f), supra, however, we concluded that the trial judge's comment did not violate either the current or former version of OCGA § 17-8-57, and that, as a result, counsel's failure to object did not constitute ineffective assistance under either version of the statute.[55] It necessarily follows that the Appellant cannot demonstrate any prejudice resulting from the delay in pursuing the instant appeal.

(h) The trial transcript shows that, after jury deliberations had begun, the jury sent a request to the court asking for permission to watch the video-recording of the Appellant's custodial interview. The court granted the request without objection, and the court gave the jurors transcripts of the interview so they could follow along, because some of the Appellant's statements were incomprehensible. After the jurors watched the video-recording, the court collected the transcripts from the jurors.

---

[54] See Division 3 (f), supra.

[55] See *Hampton*, 295 Ga. at 670 (2).

The Appellant contends that his counsel's failure to object to allowing the jury to watch the video-recording with the transcripts after they had begun deliberating constituted ineffective assistance. Pretermitting whether there was a legal basis for an objection under these circumstances, the Appellant is unable to demonstrate any resulting prejudice. The trial transcript shows that the Appellant's trial counsel, the prosecutor, and Wise's counsel questioned the Appellant extensively about what he and the detective said during the interview, often going line-by-line through the interview transcript. In addition, Detective Velasquez testified at length about the interview and was thoroughly cross-examined.

We conclude that the trial court did not err in finding that the evidence at issue was relevant and admissible and that the Appellant failed to demonstrate any prejudice that resulted from counsel's failure to object. Thus, the Appellant cannot prevail on this ineffective assistance claim.

(i) Although the Appellant argues that his counsel was deficient for failing to move for directed verdict on Counts 85 and 86,[56] this argument lacks merit for the reasons given in Division 2, supra.

(j) The Appellant contends that his counsel's alleged failure to consult with his co-defendants' attorneys constituted ineffective assistance, claiming that "[n]o reasonable defense counsel would have made the same decision under the same circumstances." He has failed, however, to cite to any facts or authority to support this contention, nor has he articulated how he was prejudiced by such alleged oversight. It follows that this argument lacks merit.

(k) According to the Appellant, he was prejudiced by the cumulative effect of his counsel's errors. We conclude that this argument lacks merit for the reasons given in subdivisions (a) through (j) of this Division.

*Judgment affirmed. Miller, P. J., and Doyle, J., concur.*

---

[56] The trial transcript shows that Wise's attorney moved for a directed verdict on Count 85, which was denied by the court. The transcript also shows that the Appellant's trial counsel moved for a directed verdict on Counts 80 (participation in gang-related activity) and 87 (cruelty to children). Although the court denied those motions, the jury ultimately acquitted the Appellant on both of those crimes.